LOTTINGER, Judge.
This is an action in tort resulting from an automobile collision. We believe it necessary to give a detailed recitation of the undisputed facts reflected by the record herein. Mr. Joseph C. Seamon, one of the parties defendants, was employed by Mr. John E. Mutrie, another of the parties defendants as his assistant; Mr. Mutrie being a distributor or dealer for the Times Picayune newspaper in Baton Rouge. In addition to his employment as Mr. Mutrie’s assistant, Mr. Seamon also had an individual paper route. The evidence in the record indicates that Mr. Seamon would arise at about 3:30 every morning, sometimes as a result of a telephone call from Mr. Mutrie and sometimes as a result of a telephone call from Mr. Mutrie’s answering service. Upon arising, he would get into his own personal automobile and then drive to Mr. Mutrie’s office where the various papers to be delivered by each of the route men or delivery men were stacked in groups to be picked up by those men. He would pick up these papers, proceed to deliver them throughout his entire route, return to his home at about 6:30 in the morning and then proceed to go about his duties as Mr. *673 Mutrie’s assistant. These duties consisted primarily of collecting from accounts such as drugstores, hotels, etc., and distributing the New Orleans States-Item, the afternoon paper.
In his capacity as Mr. Mutrie’s assistant, Mr. Seamon was paid a salary of $90.00 a week and was given an allowance of $25.00 a week to compensate him for the use of his own personal automobile. In his capacity as a route man or a delivery man for Mr. Mutrie, Mr. Seamon made $.48 per customer per month on the newspapers which he delivered on his route and in addition, was given a separate car allowance by Mr. Mu-trie amounting to $75.00 per month for the use of his automobile in connection with delivery to his individual customers.
On October 20, 1961, Mr. Seamon, after having been awakened by a telephone call from Mr. Mutrie, dressed, got into his automobile and proceeded toward Mr. Mu-trie’s office to pick up his morning newspapers to deliver to the customers on his route. While still on his way to the office, and before he reached it, Mr. Seamon’s vehicle became involved in a head-on collision with a vehicle belonging to the Sheriff of the Parish of East Baton Rouge and occupied by two Deputy Sheriffs. The passenger in the Sheriff’s vehicle, C. Warren Beard, subsequently filed this suit alleging that he suffered personal injury, and naming as defendants, Joseph C. Seamon and his liability insurer, American Employers Insurance Company; John E. Mutrie, Jr., Mr. Seamon’s employer; The Times Picayune Publishing Corporation, and The Travelers Insurance Company. The petition alleges that Mr. Seamon was an employee of The Times Picayune Publishing Corporation and that he was engaged in the course and scope of his employment at the time of the accident. The petition further alleges that at the time of the accident there was in force and in effect a policy of insurance issued by The Travelers Insurance Company which insured the Times Picayune Publishing Corporation and/or Joseph C. Seaman and/or John E. Mutrie, Jr. against liability.
After filing of the petition, The Times Picayune Publishing Corporation and The Travelers Insurance Company moved for a summary judgment dismissing them from the suit by reason of the fact that Joseph C. Seamon was not, at the time of the accident, engaged in the course and scope of his employment in that he had not yet begun delivering papers or performing any duties at all in connection with his occupation on that particular day. The Motion for Summary Judgment further urged that the suit as against The Travelers Insurance Company be dismissed because under the terms of the policy issued by The Travelers Insurance Company, this accident was not one to which the policy afforded coverage.
On March 6, 1963, the Honorable Jess Johnson, Judge of the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, rendered judgment maintaining the Motion for Summary Judgment filed by the Times Picayune Publishing Corporation and The Travelers Insurance Company, and dismissed the plaintiff’s suit as to those defendants. Shortly thereafter, the plaintiff timely filed a motion for a new trial, which was granted. The Motion for Summary Judgment was thereafter reargued before the Honorable Fred A. Blanche, Jr., Judge of the Nineteenth Judicial District Court, who, on September 3, 1964, rendered judgment reinstating the judgment of the Court rendered on March 6, 1963, and granting the Motion for Summary Judgment and dismissing plaintiff’s suit as to The Times Picayune Publishing Corporation and The Travelers Insurance Company. It is from this judgment granting the Motion for Summary Judgment that the plaintiff has perfected this appeal.
We believe that this case resolves itself into two questions; first: Can The Times Picayune Publishing Corporation be held liable for the actions of Mr. Seamon under the Doctrine of Respondeat Superior under *674 the facts of the present case; and secondly: whether or not either Mr. Seamon and/or his vehicle were insured by the policy of insurance issued by The Travelers Insurance Company.
With reference to the first question, we believe that the record clearly establishes the pattern, nature and extent of Mr. Sea-mon’s duties, both as a route carrier, or delivery man, and as assistant to Mr. Mutrie. We believe that the record amply supports the fact that at the time of the collision, Mr. Seamon was on his way to work and had not yet begun to perform the business of his employer, if the Times Picayune Publishing Corporation can be considered to have been his employer. In any event, Mr. Seamon had not yet begun to perform his duties for any employer.
The jurisprudence with reference to whether or not an employee in going to and from his place of employment is considered as acting within the scope and during the course of his employment to such an extent as to render his employer liable to third persons for his negligent acts is less than absolute, primarily by reason of the fact that each of the cases concerned with this problem have been considered in the light of their own particular facts.
The general rule is that an employer is not liable for the negligent acts of his employee while the employee is on his way to or from his employment.
This Court considered and rendered judgment in the case of O’Brien v. Traders and General Insurance Company, 136 So.2d 852. In that case, we quoted extensively from the opinion of the distinguished Trial Judge, which reviewed exhaustively all of the cases relative to an employer’s liability for negligent acts of an employee while going to and from his place of employment. In the O’Brien case we held that an employee of LSU’s Agricultural Extension Service who resided in Winnsboro, Louisiana, and who at the time of the accident was in route to LSU in Baton Rouge to attend a meeting at which he had been ordered to be present and for which meeting, hotel accommodations were arranged for him and for which travel he was paid mileage at the rate of $.02 per mile, was in the course and scope of his employment. Among the cases cited in the opinion were some in which it was found that the employee was acting within the course and scope of his employment and some wherein it was held that the employee was not within the course and scope of his employment at the time of the accident. Each of these cases were considered on their own merits and on the particular facts set forth therein.
We have in this case a newspaper delivery man whose function, at the particular time of the day that this accident happened, was to go to the office of his employer, to there pick up newspapers and load them into his automobile, and to proceed from that point and deliver these newspapers to the various customers. The purpose and aim of the employee was to effect delivery of the newspapers to the various customers. This could not be commenced until such time as he picked up those newspapers which were to be delivered. This accident happened before the employee was able to pick up those papers which he was to deliver and therefore happened prior to the time that the employee had actually commenced working. He was on his way to work, and nothing more. In the O’Brien case, the employee was on his way to attend a meeting which he had been ordered to attend, and in addition thereto, he was to be provided with hotel lodgings and with a mileage allowance based on $.02 per mile traveled. In the instant case, Mr. Seamon received a flat monthly allowance from his employer which he was to use to defray the cost of operating his automobile in connection with delivery of his newspapers. He was not paid on a mileage bases, with his mileage commencing at his home, but rather was paid on a flat fee basis to compensate him for the expenses of delivering his newspapers as aforesaid.
*675 We do not believe that the simple fact that the employer called Mr. Seamon on occasion to wake him up so that he could proceed to the office to pick up his newspapers is a sufficient exercise of control on the part of the employer to enable us to find that Mr. Seamon was within the course and scope of his employment as soon as he left his house. On the contrary, the record indicates that Mr. Seamon, as often as not, called his employer’s answering service and requested that they wake him up in the morning by means of a telephone call. It therefore appears that this telephone call, whether made by the employer or by his answering service was in the nature of a convenience provided to the employee by the employer, and was provided, as often as not, at the request of the employee.
We believe that the facts of this case are very similar to those in the case of Gallaher v. Ricketts, La.App., 191 So. 713. In this case, a Times Picayune route man was involved in an accident while operating his own automobile but while on his way to attend a required “pep” meeting for route men of the Times Picayune. Ricketts was allowed $5.00 per week as a car allowance in connection with the delivery of newspapers. The Court held that the route man was not in the course and scope of his employment for the Times Picayune at the time of the accident. In so holding, they stated:
“We conclude that Ricketts, in driving his own automobile to the place of business of his employer under the circumstances shown here, was not acting within the scope of his employment. If he was so acting, then every employee in going to work should also be held to be acting within the scope of his employment. And we see no reason to conclude that, because here an allowance was made for the use of the car in delivering papers, the master should be held liable for the negligent operation of that car on other occasions.”
We believe that here, as in the Gal-laher case, the employee was given an allowance for the use of his car in delivering papers and we do not feel that the master should be held liable in this instance either for the negligent operation of that car on an occasion when he was not delivering papers. As stated previously, we find as a matter of fact that Seamon was on his way to work at the time that the accident happened and had not yet begun delivering papers.
Counsel for plaintiff has urged that the use of vehicle by Seamon in traveling to work permitted him to get started delivering his papers earlier than would otherwise be possible and that this was a benefit to the Times Picayune, and that therefore this benefit derived by the employer was sufficient to place the employee within the course and scope of his employment while on his way to work. We believe that this contention was answered in the case of Boyce v. Greer, La.App., 15 So.2d 404, which is a case which was cited in the O’Brien case and wherein the Court stated:
“ * * * [i]t is manifest that in all cases one can travel faster and arrive at his destination quicker by bicycle or automobile than on foot. If this alone established liability the employer would always be responsible. Something more is required, some distinguishing fact establishing that under the peculiar facts of employment the business interest is directly benefitted. * * * For example, where an employee works for another at a given place of employment, and lives at home or boards himself, it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and his place of employment.”
*676 Let us now consider the question of coverage under the terms of the policy of insurance issued by The Travelers Insurance Company. The policy, under its terms and specifically, tinder Definition of Hazards in Section 1, insures three specific classes of automobiles. The first is Owned Automobiles, that is automobiles owned by the assured, with which we are not concerned. It secondly insures Hired Automobiles, which is defined “as an automobile used under contract in behalf of or loaned to the named assured provided such automobile is not owned by or registered in the name of (a) the named insured, or (b) an executive officer thereof or a partner therein, or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile”. (Emphasis supplied.) Obviously, the definition of Hired Automobile under Section 4 of the policy clearly eliminates the possibility that Mr. Sea-mon’s vehicle was covered thereunder, because it is agreed by all parties that the •vehicle involved in the collision was one owned by an employee or agent of the named insured who had an operating allowance for the use of such automobile. The third class of automobile insured under the terms of the policy is a Non-Owned Automobile. Under Paragraph III wherein the word “insured” is defined, the word “insured” with reference to Non-Owned Automobiles is defined as “any executive officer of the named insured”. Mr. Seamon is not an executive officer of the named insured. We therefore find that the vehicle belonging to Mr. Seamon is not insured under division 1 of the Definition of Hazards because the automobile is not an automobile owned by the named insured. We find that the automobile belonging to Mr. Seamon is not covered under division 2 of Definition of Hazards which is defined as a Hired Automobile, because Mr. Seamon is an employee or agent of the named insured and who was granted an operating allowance for the use of his automobile. Mr. Sea-mon’s automobile does not come within the definition of division 3 of Definition of Hazards, which is Non-Owned Automobiles, because of the fact that the only insured under that particular sub-section is an executive officer of the named insured operating a non-owned automobile. We therefore interpret the policy issued by The Travelers Insurance Company as not affording coverage of any character either to Mr. Seamon individually or to his automobile.
We find that based upon the record, there is no genuine issue as to any material fact herein and the summary judgment granted by the Trial Court is therefore affirmed.
Judgment affirmed.