334 So.2d 730 (1976)
Lenora G. HATHORN, Plaintiff-Appellee,
v.
CONTINENTAL BANKERS LIFE INSURANCE COMPANY OF THE SOUTH, Defendant-Appellant.
No. 5530.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
*731 Gist, Methvin & Trimble by Alonzo P. Wilson, Alexandria, for defendant-appellant.
Gravel, Roy & Burnes by Dan E. Melichar, Alexandria, for plaintiff-appellee.
Before CULPEPPER, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
This suit arises out of a claim for benefits under a group hospitalization policy. The case was tried on a stipulation of facts. A certified copy of the insurance policy was introduced into evidence. The trial court rendered judgment in favor of plaintiff in the sum of $2,912.04, and defendant has appealed. We reverse.
On December 13, 1973, plaintiff's husband, Alfred W. Hathorn, sustained injuries as a result of a gunshot wound incurred during the course of a robbery at his place of business. These injuries were incurred at a time when Mr. Hathorn was operating a business known as Hathorn's Pecans, which business was owned and operated by Mr. Hathorn for profit. Mr. Hathorn was self-employed. His business was a seasonal business whereby he bought and sold pecans during the fall of the year in conjunction with the pecan harvest.
On the day in question, three (3) individuals walked into the store and told Mr. Hathorn that they had some pecans to sell and then informed him that they were going to hold him up and demanded that he give them his money. Mr. Hathorn refused to turn over his money and he was shot. He later died on March 31, 1974 of causes unrelated to the accident.
Suit was brought by Mr. Hathorn's widow and surviving children for benefits allegedly due under the group hospitalization policy issued by the defendant, Continental Bankers Life Insurance Company of the South, to the Rapides Parish School Board. This policy affords medical and hospitalization benefits to plaintiff, as an employee teacher of the School Board, for certain expenses incurred as a result of non-occupational bodily injury incurred by the plaintiff or members of her family.
The issue to be decided in this case is whether the medical and hospitalization expenses, which form the basis of this suit, were incurred as a result of a non-occupational bodily injury within the intendment of the coverage provisions of the policy.
In defining "non-occupational bodily injury," the policy provides:
"The term `non-occupational bodily injury' means an accidental bodily injury which does not arise out of, or in the course of, any employment or occupation for compensation or profit, and which is not caused or contributed to by, or as a consequence of, any injury which arises out of, or in the course of, any employment or occupation for compensation or profit.
Anything in the foregoing paragraph to the contrary not withstanding, an accidental bodily injury which arises out of, or in the course of, the employee's employment with the policyholder, shall, for the purposes of insurance under the policy, be considered a `non-occupational bodily injury."
Under the section entitled, "Exclusions and Limitations," paragraph 13 states:
"No Major Medical Expense Benefits will be payable for or in connection with *732 (a) any charges which are not specifically included in the section entitled `Covered Charges,' or (b) any charges
* * * * * *
13. for any medical case, services or supplies received or furnished in connection with, or as a result of (a) any bodily injury which arises out of, or in the course of, any employment or occupation (other than with the Policyholder) for compensation or profit, or (b) any sickness for which benefits are payable under any Workmen's Compensation Law, occupational disease law or any other legislation of similar purpose."
This policy language clearly and unambiguously precludes coverage for injuries which arise out of, or in the course of, any employment or occupation (other than with the Policyholder) for compensation or profit. Thusly stated, the issue resolves itself into the question of whether or not the injury complained of arises out of, or in the course of Mr. Hathorn's employment.
Defendant argues that this question should be answered in its favor because of the following sentence from Paragraph IV of the stipulation:
"Mr. Hathorn was injured on the date in question while in the course of running his business known as Hathorn's Pecans."
We do not feel that this sentence taken from the narrative statement of facts should be used to decide the legal question of whether or not Mr. Hathorn was in the course of his employment within the intendment of the policy provisions.
We have examined the Louisiana cases cited by counsel for both plaintiff and defendant and do not find them dispositive of the issue before us.
In Johnson v. Northern Assurance Company of America, 193 So.2d 920 (La.App. 3rd Cir. 1967), a case relied on by plaintiff, the sole issue presented for the Court's determination was whether a deputy sheriff is an "employee" within the meaning of the exclusionary clause contained in the policy. The clause on which the insurer relied provides as follows:
[No coverage is afforded by this policy] "Under division 1 of coverage C [medical payments provision], to bodily injury to or sickness, disease or death of any employee of the named insured or spouse arising out of and in the course of (1) * * *; (2) other employment by the named insured or spouse; * * *"
In finding coverage, the Court stated:
"In our opinion, it is obvious that a clause in any automobile liability policy which withdraws medical payments coverage in case of bodily injury to, or sickness, disease or death of any employee of the named insured arising out of and in the course of his employment is designed to prevent multiple recovery of medical expenses by the employee under this type of policy, and the parallel provisions of our Workmen's Compensation Law."
The Court distinguished the case of Myers v. Fidelity & Casualty Co. of New York, 152 So.2d 96 (La.App. 3rd Cir. 1963), wherein coverage was denied, on the grounds that the plaintiff was protected by workmen's compensation, whereas the plaintiff in Johnson was not. It is important to note that the court in both cases recognized a correlation between the exclusion clause in an automobile liability policy and coverage provisions of our Workmen's Compensation Act, and decided the covererage question in the light of this correlation.
The reasoning used by the court in Johnson is inapplicable to the instant case because of a basic difference in the policy provisions at issue. In Johnson, no coverage is afforded, "to bodily injury to . . any employee of the named insured or spouse arising out of and (emphasis ours) in the course of (1) . . .; (2) other employment by the named insured or spouse; . . . ." This language clearly tracks the wording of the Workmen's Compensation *733 Act, LSA-R.S. 23:1031, and justifies the conclusion that the purpose of the exclusionary clause is designed to prevent multiple recovery.
In the instant case, the policy excludes benefits
"For any medical care, services or supplies received or furnished in connection with, or as a result of (a) any bodily injury which arises out of, or (emphasis ours) in the course of, any employment or occupation (other than with the Policyholder) for compensation or profit, or (b) any sickness for which benefits are payable under any Workmen's Compensation Law, occupational disease law or any other legislation of similar purpose."
There is no correlation between the Workmen's Compensation Act and the language used here. On the contrary, the policy clearly envisions the situation of selfemployed individuals who do not come under the Workmen's Compensation Act. The insurer obviously intends that these individuals provide their own business coverage, or, in cases of no coverage, that the business bear the risk. Furthermore, unlike the policy provision in Johnson, the exclusion in the instant case is not written to prevent double recovery for an employee of the policyholder. In fact, it specifically allows double recovery if the bodily injury arises out of, or in the course of any employment or occupation with the Policyholder. For these reasons, the Johnson case is inapposite and its reasoning cannot be used to support plaintiff's position.
The second case upon which plaintiff relies is Rankin v. New York Life Insurance Company, 240 So.2d 758 (La.App. 2d Cir. 1970), writ refused, 1971. This case is likewise inapplicable in that the policy language in Rankin was held to be ambiguous, and the disputed portion was construed against the insurer. The court stated:
"New York Life having failed to compose its hospital expense exclusionary provision in four separate subsections, it becomes the duty of this court to determine if the clause is ambiguous and, if so, to interpret it in a manner consonant with the provision of La.C.C. Art. 1957, supra. We conclude that, if intended to be considered as two exclusions, the condition designated (c) is ambiguous. Therefore, we construe the disputed portion to mean the insured dependent is entitled to hospital benefits unless her confinement is due to accidental injury or sickness arising out of or in the course of her employment, for which she would be entitled to benefits under a Workmen's Compensation Act or similar legislation."
The exclusion in the instant case is clear and unambiguous under the test set forth in Rankin, because each subsection of the exclusion is clearly designated as such. Furthermore, there is no logical way to read the exclusion in the instant case as excluding coverage only if the plaintiff is entitled to benefits under the Act.
Plaintiff additionally argues that the liberal construction placed on the terms "arising out of" and "in the course of" in workmen's compensation cases should not be used to defeat coverage in the instant case. The reasoning behind this argument is that the liberal construction implements a public policy that seeks to compensate persons injured in hazardous occupations and these terms are so construed as to favor payment to the injured party.
In its written reasons, the trial court applied this reasoning and concluded that plaintiff's injury did not arise out of or in the course of his employment.
In Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970), the Supreme Court faced the problem created by the narrow interpretation given to the phrase "in the course of his employment" in tort actions as opposed to the liberal interpretation given to this phrase in workmen's compensation cases. This case involved an interpretation of the phrase, *734 "in the course of" as used in an exclusionary clause in an automobile liability policy. The Court of Appeal had ruled that the liberal interpretation afforded the phrase in compensation cases was not controlling and found coverage. The Supreme Court reversed and stated as follows:
"Our research of the matter, however, reveals that there are some cases which do hold that in tort actions, where the issue is whether an alleged tort feasor is in the course of his employment, the same considerations are not given to holdings involving the same issue in compensation suits, because a stricter rule applies in tort action. But those decisions were rendered in suits by third parties against the employer of the tort feasor, and recovery depended on the application of the doctrine of respondeat superior. Even so, there are cases in the jurisprudence to the contrary."
In a footnote in the case of LeBrane v. Lewis, 292 So.2d 216 (La.1974), Justice Tate pointed out that the increasing trend is to employ the same test in tort and workmen's compensation cases. In the recent case of Spain v. Travelers Insurance Company, 332 So.2d 827 (La. 1976), the Supreme Court followed its previous decision in Manuel v. Liberty Mutual Insurance Company, supra, and held that the same test should be used in construing liability policies as is used in workmen's compensation cases. Such pronouncements by our Supreme Court led us to the conclusion that the notion of separate tests should not be relied on to decide the instant case.
It is important to reiterate that the policy provision in the instant case requires only that the injuries arise out of or in the course of any employment or occupation. Louisiana jurisprudence recognizes that these terms are not synonymous. See Gorings v. Edwards, 222 So.2d 530 (La.App. 4th Cir. 1969), and cases cited therein, and Hall v. Joiner, 324 So.2d 884 (La.App. 3d Cir. 1975). It has long been recognized that the term "in the course of," involves the time and place relationship between the risk and the employment, while the term "arising out of" concerns itself with an inquiry into the character or origin of the risk. This distinction has been recognized not only in workmen's compensation cases, but also in tort cases. Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Williams v. Shreveport Yellow Cab Co., Inc., 183 So. 120 (La.App. 2nd Cir. 1938); LeBrane v. Lewis, supra.
While we have been unable to find any Louisiana case involving the exact policy language at issue in the instant case, the above discussed jurisprudence dealing with torts, workmen's compensation, and automobile liability policies, offers guidelines in interpreting the phrase, "in the course of his employment." In view of this jurisprudence, we have little difficulty in finding that the plaintiff in the instant case was injured "in the course of" his employment or occupation. Mr. Hathorn was shot at his place of business, during his working hours, and while actually operating his business.
Having determined that Mr. Hathorn's injuries were incurred while in the course of his employment or occupation, it is unnecessary to decide whether his injuries "arose out of" his occupation. However, it is our opinion that even if the word "or" were construed to mean that "in the course of" is the equivalent of, or explanatory of, "arises out of," the exclusion would nonetheless preclude coverage. This view is supported by the reasoning of the court in Manuel v. Liberty Mutual Insurance Company, supra; Spain v. Travelers Insurance Company, et al., supra, and somewhat by the reasoning of the court in LeDoux v. Travelers Insurance Company, 223 So.2d 684 (La.App. 4th Cir. 1969).
We conclude that under the clear and unambiguous terms of the policy, Mr. Hathorn did not incur hospitalization and *735 medical expenses resulting from a "nonoccupational bodily injury" so as to bring him within the coverage provision of the policy in question.
For the reasons assigned, the judgment of the trial court is reversed, at appellee's cost.
REVERSED AND RENDERED.