401 So.2d 615 (1981)
John F. ARLEDGE, Jr., Plaintiff-Appellant,
v.
ROYAL-GLOBE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 8275.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
*616 Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant-appellee.
Trimble, Randow, Smith & Wilson, James T. Trimble, Jr., Alexandria, for defendant-appellee-appellant.
Gist, Methvin, Hughes & Munsterman, David A. Hughes, McLure & McLure, John C. Pickels, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and SWIFT, JJ.
DOMENGEAUX, Judge.
On October 19, 1978, John F. Arledge, Jr. was injured when a 20 to 25 pound pipe fell from the back of a passing eastbound pulpwood truck and struck Arledge's westbound pickup truck, shattering the windshield and striking him. Arledge sued the driver and owner of the pulpwood truck, Robert L. Earthly; Mid-American Casualty Company, Earthly's alleged insurer;[1] Grant Forest Products, Inc. (Grant), Earthly's alleged employer; Commercial Union Insurance Company (Commercial Union), Grant's insurer; and Royal-Globe Insurance Company (Royal-Globe), Arledge's uninsured/underinsured motorist insurer. In addition, Royal-Globe filed a third party demand against Earthly and Grant.
Grant and Commercial Union filed a motion for summary judgment contending that Earthly was not an employee of Grant, or, if he was found to be an employee, that he was not acting within the course and scope of his employment at the time of the accident. Movers supported their motion with the deposition of Robert Earthly.
Arledge and Royal-Globe opposed the motion but offered no evidence in opposition to the motion. The trial court granted the motion for summary judgment on the basis that "Mr. Earthly's operation received nothing near the modicum of control necessary from Grant Forest Products to render him an employee or servant of Grant...." From the granting of this motion, which had the effect of dismissing Grant and Commercial Union from the suit, both Arledge and Royal-Globe have appealed.
The only issues on appeal are: (1) Is there a genuine issue of material fact as to whether Earthly was an employee of Grant? (2) Assuming Earthly was an employee of Grant, is there a genuine issue of material fact as to whether he was acting within the course and scope of his employment at the time of the accident? We will consider each of these issues separately.

THE EMPLOYER-EMPLOYEE RELATIONSHIP
Under the doctrine of respondeat superior, employers are responsible for the torts of their employees committed during the course and scope of employment. La. C.C. art. 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). In determining whether a person's status is that of independent contractor, in which case there is no vicarious liability, or that of mere servant, in which case the employer is vicariously liable for the torts of his employee, the courts must determine whether and to what degree the right to control the work is reserved by the employer. The supervision and control which is actually exercised is less significant. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955); Odom v. Eaves, 311 So.2d 575 (La.App. 3rd Cir. 1975).
The following facts were adduced by reading the deposition, and were relied upon by the trial court granting the motion for summary judgment: Defendant Earthly owned his own pulpwood truck and tools; he was responsible for all expenses incurred in connection with operating his truck, such as gas, oil, tires, and insurance, and he was not paid any travel expenses; he worked *617 when he chose to do so; how he cut the wood and hauled it was entirely up to him; he enjoyed complete discretion to hire and fire those who helped him cut and haul the wood; he could hire as many or as few employees as he desired to help him cut and haul the wood; he was not required to wear any safety equipment while he worked; Grant paid him $19.00 per cord of wood delivered to either of two wood yards with whom Grant had a contract; and Grant did not withhold any amount from his checks for social security, federal income tax, or state income tax.
To reach its decision, the trial court relied upon only those facts which tended to support the movers' motion for summary judgment.
In the recent case of Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981), the Louisiana Supreme Court set forth the rules to be applied when determining the merits of a motion for summary judgment:
"A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. To satisfy his burden the mover must meet a strict standard by a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. The papers supporting mover's position are closely scrutinized, while the opposing papers are indulgently treated, in determining whether the mover has satisfied his burden." (Citations omitted; Emphasis added).
Under the Vermilion Corporation analysis, we are required to scrutinize papers supporting the motion for summary judgment while indulgently treating those papers supporting the opposers of the motion. Although only Earthly's deposition was offered as evidence for either side, much of his testimony supports the opposers' position that he is an employee of Grant: Earthly's sole source of income for the past ten to fifteen years has been from work performed for Grant; Stewart James, a Grant supervisor, tells him which trees to cut and where they are located; and whenever he is told to do something by James he immediately obliges. In addition, Earthly testified that he felt Stewart James and Carroll Maxwell (apparently James' supervisor) were his bosses; that if he refused one of James' requests, he could be fired; that if his work was not satisfactory in any other way, he could be fired; and that if he did not show up for work for two or three days in a row, James or another Grant employee would call upon him to determine what the problem was. Furthermore, Grant loaned Earthly the money used to buy his truck, his equipment, and his automobile insurance. To repay itself for these loans, Grant would withhold $2.00 per cord of wood that Earthly cut and delivered. However, the deposition does not reveal whether Earthly was paying interest on the loan. Finally, Earthly and his employees are covered by Grant's workmen's compensation insurance policy.
After examining Earthly's deposition in the light most favorable to the opposers of the motion for summary judgment, Arledge and Royal-Globe, we conclude that a genuine issue of material fact exists as to whether Earthly was an employee of Grant.
In arguing that the facts adduced from Earthly's deposition conclusively demonstrates that he is not an employee of Grant, Grant and Commercial Union rely principally upon the recent case of Johnson v. Maricle, 386 So.2d 677 (La.App. 3rd Cir. 1980). Therein, Maricle, a pulpwood cutter and hauler, negligently struck plaintiff's tractor with his loaded pulpwood truck while en route to a woodyard owned and operated by one Cloud. Plaintiff sued Maricle and *618 Cloud, contending that Maricle was an employee of Cloud. The trial court granted judgment against Maricle because he was the tortfeasor, and against Cloud for making it possible for Maricle "to get on the highways of this State with a used wood truck without any public liability insurance...." The trial court did not address the issue of whether an employer-employee relationship existed between Maricle and Cloud. A panel of this Court speculated that the trial court did not believe that an employer-employee relationship existed, otherwise it would have been simpler for the trial court to permit recovery based on Cloud's vicarious liability as Maricle's employer, rather than on the erroneous theory of recovery upon which the judgment was based. The Court then concluded that the trial court was not clearly wrong in finding that no employer-employee relationship existed.
Pertinent facts from the Johnson v. Maricle case were outlined in the Court's opinion as follows:
"Maricle testified that he had been hauling pulpwood for Sam Cloud for approximately two to three years prior to the accident. Once the wood was cut and hauled to Cloud's woodyard, Maricle was paid the proceeds which were determined directly by the number of cords of wood he had hauled, less stumpage. The record shows that Cloud would withhold amounts from the proceeds paid to Maricle, which amount was used to pay the note on the truck that Cloud had arranged for Maricle to purchase. Furthermore, the record shows that on one occasion, Maricle delivered pulpwood to a woodyard which was not owned and operated by Sam Cloud. As a result, Cloud threatened to have Maricle's truck taken away.
The record further reveals that Maricle exercised complete control and ownership of the truck and maintained it through the use of his own funds. Title to the truck was in Maricle's name, and the truck was garaged at his residence. Cloud in no way exercised direct supervision over Maricle's activities while he was cutting pulpwood. Maricle had his own employee whose wages were paid by Maricle himself. Maricle was free to cut pulpwood wherever he deemed expedient. Cloud did not inform or instruct Maricle where to go to find the pulpwood which he would cut and haul to Cloud's woodyard.
Maricle supplied and used his own tools, gasoline and lubricants in his wood-cutting operation. Cloud did not withhold any sums for social security or federal and state income taxes from the proceeds paid to Maricle.
* * * * * *

Maricle was not under the continuing auspices of Cloud and was free to procure pulpwood from whomever he desired. Although Cloud apparently `required' Maricle to haul exclusively for him, Maricle had in the past hauled pulpwood to another woodyard. Cloud did exercise a type of control over Maricle; however, this control was not the type characteristic of an employer-employee relationship. The relationship between Maricle and Cloud was more in the nature of a buyer-seller. This being the case, the power of dismissal which an employer ordinarily commands over an employee was not present as it is in the ordinary employer-employee relationship. The wages paid to Maricle were directly related to the amount of wood which he cut and hauled to the woodyard. Cloud did not control how much wood Maricle cut and sold. The fact that Cloud co-signed a note with Maricle in order that Maricle could purchase a truck is not a fact of such significance so as to render the existing relationship one of employer-employee. The truck could not be repossessed so long as Maricle continued to make the required payments, regardless of Cloud's posture as a co-maker or surety on the note." (Emphasis added).
The facts in Johnson v. Maricle are similar in many respects to the facts here, but the cases are distinguishable. Maricle was free to procure pulpwood from whomever *619 he desired and could sell the pulpwood to whomever he chose. Also, Cloud did not control how much wood Maricle cut and sold or when he cut it. However, certain statements made by Earthly in his deposition which support Arledge's and Royal-Globe's position raise a question as to whether Earthly enjoyed the same degree of freedom.
Possibly the most important distinction between this case and Johnson is the standard of appellate review which must be applied. In Johnson, the Court applied the manifest error rule because it was reviewing factual findings made by the trial court after trial on the merits was conducted. In the instant case our duty is to decide whether the trial court erred in granting summary judgment. But to discharge our obligation we are not free to simply inquire whether the trial court judgment was manifestly erroneous or clearly wrong; we must apply the stricter standard set forth in Vermilion Corporation, supra.
The circumstances of this case more closely resemble those of Odom v. Eaves, supra, than of Johnson v. Maricle. In Odom, summary judgment was granted in favor of the alleged employers of the tortfeasor Eaves, who cut and hauled timber using his own truck. This Court reversed the summary judgment on the basis of an affidavit and deposition which revealed that Eaves was working on land owned by the alleged employer, Boise, and was cutting timber to be delivered to Boise's mill according to Boise's specifications. We there said that these facts raise a question of fact concerning the degree of control over which Boise could exercise over Eaves. As described above, we believe that statements made by Earthly in his deposition raise similar questions of fact concerning the degree of control which Grant could exercise over Earthly. For that reason, we decide that a genuine issue of material fact exists as to whether Earthly was an employee of Grant.

IN THE COURSE AND SCOPE OF EMPLOYMENT
Assuming that Robert Earthly was an employee of Grant Forest Products, Inc., we next consider whether there is a genuine issue of material fact as to whether Earthly was acting within the course and scope of his employment at the time of the accident. The trial court did not reach this issue since it decided that Earthly was not an employee of Grant. Hence, we do not know what its conclusion might have been, had it assumed that the employer-employee relationship existed.
Based upon Earthly's deposition, it appears that he had driven his pulpwood truck from his house to pick up his employee, Hartner Greenhouse, and was then proceeding immediately to the work site some ten miles away.
In contending that the accident occurred while Earthly was outside the course and scope of his employment, Grant and Commercial Union rely upon the general rule that an employee is not within the course and scope of his employment while going to and coming from work. Wills v. Correge, 148 So.2d 822 (La.App. 4th Cir. 1963); writ refused 244 La. 147, 150 So.2d 768 (1963); Beard v. Seamon, 175 So.2d 671 (La.App. 1st Cir. 1965); Boudreaux v. Yancey, 319 So.2d 806 (La.App. 1st Cir. 1975); and Keen v. Pel State Oil Co., Inc., 332 So.2d 286 (La.App. 2nd Cir. 1976), writ denied 333 So.2d 234 (1976).
Arledge and Royal-Globe contend, however, that Earthly was within the course and scope of his employment at the time of the accident, even though he was driving to work, because he was required and expected to drive his pulpwood truck, helpers, power saws, and other tools to the site selected by Grant for cutting on any particular day. The cases of Johnson v. Aetna Casualty & Surety Co., 387 So.2d 1340 (La. App. 1st Cir. 1980) and Willis v. Cloud, 151 So.2d 379 (La.App. 3rd Cir. 1963), writ refused 244 La. 623, 153 So.2d 415 (1963), seem to support Arledge's and Royal-Globe's contention that, although Earthly was on his way to work, there is a genuine issue of material fact as to whether he nevertheless was acting within the course *620 and scope of his employment. In both cases, the employee was going to or returning from work when he was injured in an accident. The courts concluded that the injured worker was injured while in the course and scope of his employment, and hence was entitled to workmen's compensation benefits because the truck in which each was riding at the time of the accident was a tool of his trade. In this respect Johnson and Willis are similar to this case since Earthly's truck was also a tool of his trade.[2]
Grant and Commercial Union contend that Johnson and Willis are not applicable because therein, the courts were concerned with whether the injured or killed employee was acting within the course and scope of his employment for workmen's compensation purposes. They argue that while courts liberally construe the phrase "in the course and scope of employment" in workmen's compensation cases, the same phrase is strictly interpreted and construed in tort cases where an injured third party is attempting to impose liability upon an employer for the torts of an employee. See Wills v. Correge, supra.
However, the Louisiana Supreme Court has impliedly disapproved of strictly interpreting the term "in the course and scope of employment" in tort cases in which an injured third party sues the employer of the tortfeasor/employee. In LeBrane v. Lewis, 292 So.2d 216 (La.1974), a third party who was injured when stabbed sued the employer of the tortfeasor/stabber. The Supreme Court reversed the appellate court finding that the stabbing did not occur during the course and scope of the employment. Justice Tate, speaking for a unanimous Court, said:
"The error was partially induced by the intermediate court's conclusion that the course and scope of employment must be interpreted strictly in tort cases, citing Terito v. McAndrew, 246 So.2d 235 (La. App. 1st Cir. 1971). The course-and-scope requirement may be liberally construed in workmen's compensation cases. However, aside from isolated expressions in intermediate opinions, we find no modern authority to support the holding that the requirement be strictly construed in favor of the employer in tort cases." (292 So.2d at 218, footnote 3)[3]
For purposes of determining whether the summary judgment should be granted, we believe that the phrase "in the course and scope of employment" should be liberally construed in accordance with the expression found in LeBrane. As we noted above, the facts of this case are very similar to the *621 facts of Willis v. Cloud and Johnson v. Aetna. By liberally construing the term "in the course and scope of employment", the trier of fact might conclude as those courts did that the employee (in this case Robert Earthly) was in the course and scope of employment when the accident occurred. Hence, we conclude that a genuine issue of material fact exists as to whether or not Robert Earthly was in fact in the course and scope of his employment when the accident in question occurred.

DECREE
For the above and foregoing reasons, the summary judgment of the district court which dismissed the defendants, Grant Forest Products, Inc. and Commercial Union Insurance Company, is reversed, and it is hereby Ordered, Adjudged, and Decreed that the motion for summary judgment be dismissed and that the case be remanded to the district court for further proceedings by plaintiff against all defendants, including Grant Forest Products, Inc. and Commercial Union Insurance Company. All costs are assessed against Grant and Commercial Union.
REVERSED AND REMANDED.
NOTES
[1] Mid-American contends its policy to Earthly was cancelled prior to the accident. Its motion for summary judgment on that basis was denied, and that issue was referred to the merits. Mid-American has not appealed from the judgment denying its motion for summary judgment, hence, the issue is not before us at this time.
[2] Arledge and Royal-Globe also argue that the instant case is analogous to Stephens v. Justiss-Mears Oil Company, 312 So.2d 293 (La. 1975). In Stephens, a driller was held to be in the course and scope of his employment while en route to work, even though he was not compensated for that time, because the Court believed that his employment began when he assembled a drilling crew at a convenient location prior to going to work each day. The driller was responsible for assembling the crew and getting the crew to work on time. Arledge and Royal-Globe argue that Earthly was responsible for getting himself and his helper to the designated work site early each morning. Statements made by Earthly do indicate that he was responsible for getting himself and whatever crew he had on any given day to work early each morning. Stephens is distinguished, though, because it was essential to the operation of the rig that a full crew be on hand. In the instant case, Earthly's testimony indicated that he did not need a helper but could do the work alone.
[3] See also Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970); Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976); and Hathorn v. Continental Bankers Life Insurance Company of the South, 334 So.2d 730 (La.App. 3rd Cir. 1976), tort cases which applied the liberal workmen's compensation construction of the phrase "in the course and scope of employment" for purposes of determining whether an employee's injuries were sustained in the course and scope of employment. In these cases, the employee was found to be in the course and scope of employment, so the courts found applicable a clause of a liability insurance policy which excluded coverage to employees injured during the course and scope of their employment. These cases and LeBrane v. Lewis exemplify the trend toward employing the same test in tort cases and workmen's compensation cases to determine whether an employee is within the course and scope of his employment at the time of an accident which injures either the employee or a third person.