Sally S. NEWCOMB, individually and in her capacity as Legal Guardian of Shannon Lynn Newcomb, Plaintiff-Appellant,

v.

NORTH EAST INSURANCE COMPANY, Etc., et al., Defendants,

Owens and Sons, Inc., Defendant-Appellee.

No. 83–3072.

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1983.

George M. Strickler, Jr., New Orleans, La., T. Mack Brabham, McComb, Miss., for plaintiff-appellant.

Joseph S. Palermo, Jr., Metairie, La., for Owens & Sons, Inc.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The question before the court is the narrow one of whether the district court properly determined that there existed no genuine issue of material fact, thus making summary judgment appropriate. We conclude that summary judgment should not have been granted.

I

Sally Newcomb, individually and as guardian of her minor daughter Shannon, sued for damages for an automobile accident in which Willie Wayne Newcomb, Sally's husband and Shannon's father, was killed, and Sally and Shannon both were injured. The Newcomb automobile was struck by a gravel truck owned by Joe Gaines and operated by his son Ronald Gaines. It is not now disputed that the accident was caused by the negligence of Ronald Gaines.[1]

At the time of the accident, Ronald Gaines was hauling a load of gravel from Smith Sand & Gravel Co. to Owens & Sons, Inc., a producer of ready-mix concrete. In addition to the Gaineses and their insurance company, Mrs. Newcomb sued Smith and Owens on the theory that Gaines had committed a tort in the course and scope of employment.

Owens & Sons denied that Gaines was an employee, and insisted that his relationship to them was that of an independent contractor. The district court, agreeing that no genuine issue of material fact was presented, held that Gaines was an independent contractor, and granted summary judgment for defendant Owens. Newcomb brings this appeal.

II

Because federal jurisdiction over this suit is based on diversity of citizenship, we look to Louisiana law to determine the attributes of a master-servant relationship. The right of the employer to control the employee in his performance of assigned tasks evidences a master-servant relationship; the more extensive this control, the more likely it is such a relationship will be held to exist. *Hickman v. Southern Pacific Transp. Co.*, 262 La. 102, 262 So.2d 385, 391 (1972); *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968). An independent contractor, on the other hand, works according to his own methods without direct supervision or control by the employer except as to the overall result. *Hickman*, 262 So.2d at 390. An independent contractor will ordinarily work under a contract for specific piecework at a set price over a fixed period. *Amyx v. Henry & Hall*, 227 La. 364, 79 So.2d 483, 486 (La.1955). Additionally, an independent contractor is usually less dependent economically on a particular employer than is an employee. *Hickman*, 262 So.2d at 391. No single factor is determinative as to the existence of a master-servant or employer-independent contractor relationship. *Arledge v. Royal-Globe Insurance Co.*, 401 So.2d 615, 616 (La.App.1981); *Odom v. Eaves*, 311 So.2d 575, 577–78 (La. App.1975).

Here there were many indicia of an independent contractor relationship. The Gaineses owned and maintained their own truck. They carried their own liability insurance. Owens did not carry them on its payroll or deduct income or social security taxes from their pay; nor did Owens obtain workmen's compensation insurance or pay unemployment taxes on their account. Owens did not specify the sources from which Gaines might purchase gravel, and did not dictate the time of day at which deliveries

---

1. Newcomb's claims against the Gaineses and their insurer were settled without trial.

to Owens's plant were to be made. Direct supervision or immediate control of the Gaineses' activities was slight.

There were some facts which have been held by Louisiana courts to be indicators of a master-servant relationship. The job to be done by Gaines for Owens was not a discrete piece of work. No contract specified the duration of service; either party could have terminated the relationship at any time without liability. Owens exercised at least some control over the frequency of deliveries. There was evidence of a close economic relationship between the parties.[2] Additionally, Owens required the Gaineses to supply a certificate of liability insurance.

### III

We agree with the district court's determination that the evidence as a whole bespeaks an independent contractor relationship and assume that a jury could find on this evidence that Gaines was an independent contractor rather than an employee. However, Louisiana jurisprudence favors jury resolution of questions for which no single answer is compelled. We cannot uphold the grant of summary judgment on this issue, because Owens has not in our

view established that it is entitled to judgment as a matter of law, as Fed.R.Civ.P. 56 requires. We ground this determination in our reading of Louisiana law. While sufficiency of evidence in diversity cases is measured by our *Boeing* standard, *Boeing v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc); *Maxey v. Freightliner,* 665 F.2d 1367, 1371 (5th Cir.1982) (en banc), the determination of agency and perforce the definition of material fact is by Louisiana law.

The Louisiana cases dealing with summary judgment are diverse and present few clear precepts to guide our inquiry. Carrying out our *Erie* assignment of discerning and predicting the Louisiana law, we are able to discern the following rules: 1) when there is a dispute over the actual powers of control possessed by the alleged employer, a question of fact is posed which must be submitted to the jury unless reasonable and fair-minded persons could reach but one conclusion, *Cupit v. Grant,* 425 So.2d 847 (La.App.1982),[3] *Arledge v. Royal-Globe Ins. Co.,* 401 So.2d 615 (La.App.1981); *Odom v. Eaves,* 311 So.2d 575 (La.App. 1975); 2) when the powers of control are undisputed, and there exist no contrary signals as to the nature of the relationship, the question is one of law, properly to be re-

---

**2.** Joe Gaines testified that he realized half his income by his work for Owens, and John Owens, president of Owens & Sons, Inc., testified that Owens relied on the Gaineses for approximately ten percent of all its hauling.

**3.** In *Cupit,* the trial court granted summary judgment to a landowner sued when his tenant farmer was in an automobile accident. Plaintiffs asserted that the tenant farmer was an employee of the landowner, or alternatively that the two were joint venturers; the landowner insisted that the relationship was that of lessor-lessee.

The Louisiana Court of Appeals reversed the summary judgment, holding that the relationship between these parties presented a question of fact which had to be submitted to the jury. The court found that it was not clear how the terms of the contract governing the relationship, designated a "lease" by the parties, was actually applied, and it rejected the trial court's holding that reasonable and fair-minded persons could not have detected an employment relationship. 425 So.2d at 851. In determining that the landowner was entitled to judgment as a matter of law, the trial court

had committed an "invasion of the province of the jury." *Id.*

The automobile accident in *Cupit* was also the subject of suit in federal court, and there, too, the landowner was named a defendant on the theory that the tenant farmer was his employee. *Youngblood v. Morrison Grain Co.,* 467 F.Supp. 758 (W.D.La.1978), aff'd mem., 591 F.2d 1207 (5th Cir.1979). The district court granted summary judgment for the landowner.

The later Louisiana Court of Appeals decision in *Cupit* does not invalidate the *Youngblood* holding. Rather, we infer that the facts were presented differently to the two courts, for where the *Cupit* court encountered a dispute as to the terms of the relationship, the *Youngblood* court noted that the underlying facts were not in dispute. If the facts were undisputed, the trial judge in *Youngblood* was correct to treat the determination of the relationship as a matter of law; 467 F.Supp. at 759. *See, e.g., Ocmond v. Eserman,* 259 So.2d 600 (La.App.1972).

The degree of control exercised by the landowner over the tenant farmer was the only issue relevant to the court's determination in *Youngblood.* As between an employment rela-

solved by the trial judge, *Butler v. Atwood,* 420 So.2d 742 (La.App.1982); *Badeaux v. East Jefferson Hospital,* 364 So.2d 1348 (La. App.1978); *Ocmond v. Eserman,* 259 So.2d 600 (La.App.1972); 3) when the powers of control are not in dispute, but there are other signals as to the nature of the relationship, the question is one of mixed law and fact, to be submitted to the jury unless reasonable and fair-minded persons could reach but one conclusion, *Hickman v. Southern Pacific Transp. Co.,* 262 So.2d 385 (La.1972) (implied); *Hinton v. Western Casualty & Surety Co.,* 435 So.2d 568 (La.App. 1983); *Suhor v. Medina,* 421 So.2d 271 (La.. App.1982).

■ We are mindful of the statement in *Arledge* and *Odom* that no single factor is determinative of an employment or independent contractor relationship.[4] The three principal signals are the degree of control exercised by the alleged employer, the nature of the contract between the parties, and the extent to which the parties are economically interdependent.

■ Here, if the second and third signals were not supportive of a reasonable inference of an employment relationship, we would agree with the district court that the absence of evidence that Owens could exercise meaningful control over Gaines's work activity would support summary judgment for Owens. However, the long-term nature of this relationship, the absence of a contract for performance of a discrete piece of work, the ability of either party to terminate the relationship at any time, and the degree to which the parties were economically dependent on each other[5] permit an inference of an employer-employee relation-

ship. *See Hickman v. Southern Pacific Transp. Co.* In light of these conflicting indicia, a mixed question of law and fact existed as to the true nature of the relationship between Owens and Gaines. We determine that under the Louisiana cases reasonable and fair-minded persons could differ as to the conclusion to be drawn from these conflicting indicators; consequently, summary judgment was inappropriate. We confess to some uncertainty but on balance are persuaded that our doubts must be resolved in favor of a decision by the jury. *See generally, Chaisson v. Domingue,* 372 So.2d 1225 (La.1979); *Riviere v. Bethard,* 422 So.2d 1341 (La.App.1982).

REVERSED.

---

tionship and a lease relationship, neither the time period covered by the contract nor the degree of economic dependency would ordinarily differ as it would between an employment relationship and an independent contractor relationship. Consequently, once the degree of control had been established in *Youngblood,* the relationship could be determined as a matter of law.

4. Though we recognize that some Louisiana cases have focused almost exclusively on the issue of control in analyzing a putative employment relationship, *see, e.g., Savoie v. Fireman's Fund Ins. Co.,* 347 So.2d 188 (La.1977), *Hinton*

*v. Western Casualty & Surety Co.,* 435 So.2d 568 (La.App.1983), those cases do not derogate from the rule that control—while "the most important element" in establishing such a relationship—is but one of several elements which must be weighed in making this determination. In some cases, control may be the only element put in issue before the court, or the indicia of control may be so extreme—or so slight—as to be dispositive of the employment question; this is not such a case.

