2005 SD 64

**Vanessa L. MUDLIN, Plaintiff and Appellee,**

v.

**HILLS MATERIALS COMPANY and Liberty Mutual Insurance Company, Defendants and Appellants.**

No. 23432.

Supreme Court of South Dakota.

Argued April 26, 2005.

Decided May 25, 2005.

Wm. Jason Groves, Groves Law Office, Rapid City, SD, for plaintiff and appellee.

Gregory G. Strommen of Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, SD, for defendants and appellants.

SABERS, Justice.

[¶ 1.] Vanessa Mudlin (Mudlin) was employed by Hills Materials Company (Hills) of Rapid City, South Dakota. She was assigned to a crew that was working on a road construction project near Faith, South Dakota. While traveling to the job site, Mudlin was injured as a result of a one-vehicle accident. She filed a claim for workers' compensation against Hills and its insurer. The South Dakota Department of Labor ruled in favor of Mudlin. The circuit court affirmed and Hills appeals to this Court. We affirm.

## Facts

[¶ 2.] In the spring of 1999, Mudlin lived in Rapid City, South Dakota, and was employed by Hills as a flagger, laborer, and material spreader. Mudlin was assigned to a crew that was working on a road construction project near Faith, approximately 125 miles from Rapid City.

[¶ 3.] At approximately 5:30 a.m. on Monday, June 7, 1999, Mudlin arrived at Hills' headquarters, which was located at its quarry in Rapid City.[1] After discovering that her work crew had already departed, Mudlin set-off for Faith in her personal vehicle.[2] During the trip, Mudlin was involved in a one-vehicle accident between Newell and Faith. Mudlin admits that she fell asleep at the wheel and

as a result her car left the road and rolled twice. Mudlin was found lying 30 feet from her vehicle with injuries to her head, abdomen, and left leg. Mudlin was taken to the emergency room at Lookout Memorial Hospital in Spearfish and then transferred to Rapid City where she was hospitalized for several weeks following the accident.

[¶ 4.] Mudlin brought a claim for workers' compensation benefits against Hills and its insurer, Liberty Mutual Insurance Company. After an administrative hearing on the matter, the South Dakota Department of Labor ruled in favor of Mudlin. Hills appealed the agency's decision to the circuit court. The circuit court affirmed the Department of Labor's ruling. Hills appeals to this Court, raising the following issues:

1. Whether the trial court erred in holding that Mudlin's injuries arose out of and in the course of her employment.

2. Whether the trial court erred in holding that Mudlin gave timely and proper notice of her injuries.

3. Whether the trial court erred in holding that Mudlin's claim was not barred by willful misconduct.

## Standard of Review

[¶ 5.] "In a worker's compensation case, we review the agency's decision in the same manner as the circuit court." *Norton v. Deuel School District*, 2004 SD

---

1. Whenever travel to remote work sites was required, Hills employees typically would meet at the quarry before the journey in order to coordinate travel arrangements.

2. Sylvester Pacheco, who was Mudlin's supervisor at the time, testified it was typical for Hills' employees to drive their personal

vehicles to remote job sites. While meeting beforehand at the quarry was a common company practice, it was not required. Ultimately, the employees were required to show up at the job site at a certain time regardless of their method of transportation.

6, ¶ 5, 674 N.W.2d 518, 520 (citing *Sopko v. C & R Transfer Co., Inc.*, 2003 SD 69, ¶ 7, 665 N.W.2d 94, 96). Neither the agency's decision nor the circuit court's decision is presumed correct. *Id.* (citing *Grauel v. South Dakota School of Mines and Technology*, 2000 SD 145, ¶ 7, 619 N.W.2d 260, 262). Great weight is given to the agency's findings of fact and to the inferences drawn from the facts. *Id.* Our standard of review on factual issues is clearly erroneous, meaning we will reverse only if we are "definitely and firmly convinced a mistake has been committed." *Id.* However, "we review findings based on deposition testimony and documentary evidence under a de novo standard of review." *Grauel*, 2000 SD 145, ¶ 7, 619 N.W.2d at 262 (quoting *Wagaman v. Sioux Falls Construction*, 1998 SD 27, ¶ 12, 576 N.W.2d 237, 240). Questions of law are also reviewed under the de novo standard. *Norton*, 2004 SD 6, ¶ 5, 674 N.W.2d at 520.

[¶ 6.] **1. Whether the trial court erred in holding that Mudlin's injuries arose out of and in the course of her employment.**

[¶ 7.] Generally, employees injured while going to and coming from work are not covered under workers' compensation. *South Dakota Public Entity Pool For Liability v. Winger*, 1997 SD 77, ¶ 19, 566 N.W.2d 125, 131 (stating the "going and coming" rule). To recover under workers' compensation, a claimant must prove by a preponderance of the evidence that she sustained an injury "arising out of and in the course of the employment." SDCL 62–1–1(7); *Norton*, 2004 SD 6, ¶ 7, 674 N.W.2d at 520. The claimant must prove that "the employment or employment-related activities are a major contributing cause of the condition complained of." SDCL 62–1–1(7)(a).

[¶ 8.] We construe the phrase "arising out of and in the course of employment" liberally. *Norton*, 2004 SD 6, ¶ 10, 674 N.W.2d at 521. Therefore, application of the workers' compensation statutes is not limited solely to the times when the employee is engaged in the work that he was hired to perform. *Id.*

[¶ 9.] Both factors of the analysis, "arising out of" employment and "in the course of employment," must be present in all claims for workers' compensation. *Id.* ¶ 11. However, while each factor must be analyzed independently, they are part of the general inquiry of whether the injury or condition complained of is connected to the employment. *Id.* Therefore, the factors are prone to some interplay and "deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." *Id.* (quoting 2 Arthur Larson, Larson's Workers' Compensation Law, § 29, 29–1 (1999)).

[¶ 10.] Hills argues that because Mudlin's injuries resulted from a traffic accident that occurred miles from her job site and before her work day had begun, they did not "arise out of" and "in the course of" her employment.

*"Arising out of" the Employment*

[¶ 11.] In order for an injury to "arise out of" the employment, the employee must show that there is a "causal connection between the injury and the employment." *Id.* ¶ 8 (quoting *Canal Insurance Co. v. Abraham*, 1999 SD 90, ¶ 12, 598 N.W.2d 512, 516). The employment need not be the direct or the proximate cause of the injury, rather it is sufficient if "the accident had its origin in the hazard to which the employment exposed the employee while doing [her] work." *Id.* (quoting *Canal Insurance Co.*, 1999 SD 90, ¶ 12, 598 N.W.2d at 516). The injury "arose out of" the employment if: 1) the employment contributes to causing the injury; 2) the

activity is one in which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based. *Id.* (citing *Grauel*, 2000 SD 145, ¶ 12, 619 N.W.2d at 263).

[¶ 12.] Hills had a specific policy that required employees to use their personal vehicles to get to and from the job site when company vehicles were not available. A memo was issued by Hills' President, Lynn Kading, to all supervisors and crew leaders on January 4, 1999, clarifying the company's policy regarding travel pay. In regard to the use of personal vehicles, the memo provides in pertinent part:

> If no company vehicle is used to transport employees, employees are expected to furnish personal transportation to the jobsite.

Furthermore, the memo specifies that employees will be partially reimbursed for travel expenses when their job requires travel beyond one-half hour of their base location.[3]

Hills argues that the $9 payment that Mudlin was to receive for her journey to the job site on the day of the accident, pursuant to the company's travel pay policy, was not a "substantial payment" and therefore should be considered as additional compensation rather than reimbursement for her travel expenses. However, Hills' argument is flawed in that there is no question that the $9 payment was "specifically intended for travel expenses." *See* 2 Arthur Larson, Larson's Workers' Compensation Law, § 14.07[3], 14–22 (1999). In the memo clarifying the company's travel pay policy, Hills' President, Lynn Kading, states:

> The travel pay policy is to *reimburse employees travel expenses* when their job dictates travel beyond ½ hour of their base location.

(emphasis added).

Furthermore, *Ricciardi* is readily distinguished in regard to the nature of the travel involved in each case. In *Ricciardi*, the employer made a special arrangement with an employee to partially reimburse him for the tolls he incurred during his one-hour commute from his home located in West Keansburg, N.J., to a job site in Hackensack, N.J., which was the employer's base location. *Ricciardi*, 312 A.2d at 140. In contrast, Mudlin was not being reimbursed for her commute from her home to Hills' base location in Rapid City, but she was being partially reimbursed for the expenses she incurred *while traveling from the company's base location to a remote job site, located 125 miles away.*

Therefore, Hills' argument that in this particular case a distinction should be made between reimbursement for travel expenses and additional compensation, and that the amount of compensation should also be a factor, is not controlling.

3. In its appellate brief, Hills attempts to draw a distinction between reimbursement for travel expenses and a payment made to the employee as added compensation. Hills argues that unless a payment reimburses an employee for all or substantially all of the total travel expenses involved, it should only be considered as added compensation and *not* as evidence that the journey was within the employee's scope of employment. As authority, Hills relies heavily on Professor Larson's treatise on workers' compensation, which provides in part:

> [Payment for travel expenses,] which is often lumped together with payment for time of travel, is not quite the same.
>
> . . .
>
> It should be apparent that, in some cases at least, the transportation allowance is merely a form of added compensation.
>
> . . .
>
> A common difficulty in this class of cases is that of determining whether the added compensation is indeed specifically intended for travel expenses.

2 Arthur Larson, Larson's Workers' Compensation Law, § 14.07, 14–20 to 14–22 (1999). As additional authority for this position, Hills cites to *Ricciardi v. Aniero Concrete Co., Inc.*, 64 N.J. 60, 312 A.2d 139, 141 (1973), which held that "the rationale of the exception to the going and coming rule under discussion can be sustained only in those situations where, if the employee travels by car, the employer reimburses him for *all or substantially all* of the total expense involved." (emphasis added). In *Ricciardi*, the New Jersey Supreme Court determined that an employee who was reimbursed for 40% of his traveling expenses was not entitled to workers' compensation benefits for injuries sustained while going home from work. *Id.*

[¶ 13.] On the day of the accident, Mudlin was conducting herself in accordance with established company practice and its travel policy. She first went to the quarry, as dictated by company practice.[4] When she discovered that her crew had already left, Mudlin used her personal vehicle to transport herself to the job site, as *required* by the company's travel policy. Furthermore, Mudlin had used her personal vehicle for transportation to and from the job site on a number of occasions prior to the accident. In fact, her supervisor testified that 90% of the time Mudlin would drive her own vehicle to the job site and the record indicates that she had been compensated in accordance with the company's travel pay policy for those previous trips. Nothing in the record suggests that Hills would not have expected Mudlin to use her personal vehicle to travel to the job site on June 7, 1999 and compensate her for the trip.

[¶ 14.] Given the above, the act of traveling to the job site in her personal vehicle on the day of the accident was an activity "in which the employee might reasonably engage." As such, there is a causal connection between the injuries that Mudlin sustained while traveling to the job site and her employment. Therefore, Mudlin's injuries "arose out of" her employment. *See generally id.*

*"In the Course of Employment"*

[¶ 15.] "This Court has made it clear that the words 'in the course of employment' refer to the time, place and circumstances of the injury." *Bearshield v. City of Gregory,* 278 N.W.2d 166, 168

(S.D.1979). "An employee is considered within his course of employment if he is doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment." *Id. See also Norton,* 2004 SD 6, ¶ 9, 674 N.W.2d at 521; *Steinberg v. South Dakota Dept. of Military and Veterans Affairs,* 2000 SD 36, ¶ 21, 607 N.W.2d 596, 603.

[¶ 16.] Here, Mudlin's crew was performing road construction at a remote job site which was 125 miles from the company's base location. Because employees were required to travel from the company's base location to the job site in order to perform their individual job duties, it can be said that the journey between the base location and the job site was naturally related to the employment.

[¶ 17.] Additionally, Hills has a specific policy governing travel from its base location in Rapid City to remote job sites. This policy expressly requires employees "to furnish personal transportation to the jobsite" when company vehicles are unavailable and establishes partial reimbursement for travel expenses. As indicated, prior to the day of the accident Mudlin had used her personal vehicle to travel to the job site on a number of occasions and Hills had provided partial reimbursement for her travel expenses. Therefore, Mudlin's journey to Faith on the date of the accident was impliedly authorized by Hills and, as such, was "in the course of employment."

---

4. Circuit Court Judge Max Gors made the following additional findings of fact:

    4. As part of Claimant's journey to the employer's Faith project, she first stopped at the employer's quarry in Rapid City to determine if other employees needed a ride.

    5. The employer had specifically encouraged car pooling.

    6. *The trip to the quarry by Claimant the morning of her accident was done at the request of the employer.*

    7. Claimant was using a means of transportation as authorized by the employer. (emphasis added).

[¶ 18.] At the time of the accident, Mudlin was traveling from her employer's base location to a remote job site. Pursuant to company policy, this was a trip Mudlin was required to make for which she was to be partially reimbursed. In summary, the controlling factors here are travel pay, custom and usage, and company policy. Mudlin's travel extended beyond an employee's normal commute to or from work, and falls outside of the "going and coming" rule.

[¶ 19.] Based on the above, it has not been shown that the trial court erred in holding that the injuries Mudlin sustained "arose out of and in the course of the employment." We affirm Issue 1.

[¶ 20.] **2. Whether the trial court erred in holding that Mudlin gave timely and proper notice of her injuries.**

[¶ 21.] SDCL 62–7–10 requires that an employee who claims compensation for an injury shall provide written notice to the employer within three business days of the occurrence of the injury.[5] However, when an employer had "actual knowledge" of the injury, the failure to provide notice does not bar the claim. SDCL 62–7–10(1). "In South Dakota, a person seeking worker's compensation benefits has the burden of proving that she provided timely notice of the injury or that her employer had actual knowledge of the injury." *Gordon v. St. Mary's Healthcare Center*, 2000 SD 130, ¶ 20, 617 N.W.2d 151, 157. Additionally, the claimant must prove that her employer had notice of the work-related nature of the injury. *Id.*

[¶ 22.] Mudlin failed to provide written notice of her injuries within three business days of the accident because she was in a coma for two weeks. However, Mudlin's supervisor was informed on the day of the accident that she had been injured while traveling to the job site and had been taken to the hospital.

[¶ 23.] Hills asserts that there was no actual knowledge of Mudlin's claim because they were not made aware of the compensable nature of the injury. They argue that since it did not appear to them that Mudlin sustained injuries in the course of employment, they did not believe that her injuries were compensable. However, this argument is not persuasive because Hills knew or could have known on the day of the accident that Mudlin was injured while traveling from the company's base location to the job site in her personal vehicle as required by the company.

[¶ 24.] In addition to the statutory record keeping and filing requirements imposed on the employer, one of the purposes of the notice statutes is to allow the employer the opportunity to investigate the cause and nature of the injury at the time when the facts are readi-

---

5. SDCL 62–7–10 provides:

An employee who claims compensation for an injury shall immediately, or as soon thereafter as practical, notify the employer of the occurrence of the injury. Written notice of the injury shall be provided to the employer no later than three business days after its occurrence. The notice need not be in any particular form but must advise the employer of when, where, and how the injury occurred. Failure to give notice as required by this section prohibits a claim for compensation under this title unless the employee or the employee's representative can show:
  (1) The employer or the employer's representative had actual knowledge of the injury; or
  (2) The employer was given written notice after the date of the injury and the employee had good cause for failing to give written notice within the three business-day period, which determination shall be liberally construed in favor of the employee.

ly accessible. Although Hills did not comply in this instance, under state law, employers are required to keep records of all injuries sustained by their employees,[6] report all serious injuries to either the Department of Labor or the employer's insurer,[7] and employers, or their insurers, are required to file a copy of the injury report with the Department of Labor.[8] In fact, the investigatory purpose behind these statutory requirements is stated in SDCL 62-6-3, which provides in part:

> The insurer or, if the employer is self-insured, the employer, *shall make an investigation of the claim* and *shall notify the injured employee and the department,* in writing, within twenty days from its receipt of the report, *if it denies coverage in whole or in part.*

(emphasis added).

[¶ 25.] Under Hills' argument, injured employees who failed to file notice of their claim within three business days of the injury would have to convince their employers of the compensable nature of their injuries prior to filing a workers' compensation claim. Furthermore, employers and

---

6. SDCL 62-6-1 provides:

Every employer coming under the provisions of this title shall keep a record of all injuries, fatal or otherwise, sustained by the employer's employees in the course of their employment. The record shall be completed within seven calendar days, not counting Sundays and legal holidays, after any employer has knowledge of the occurrence of an injury. The record shall be on a form approved by the Department of Labor. The employer shall preserve the record for a period of at least four years from the date of injury. The record shall be signed by the employer and a copy given to the injured employee. Any employer who fails to complete or maintain the injury records required by this section is guilty of a Class 2 misdemeanor.

7. SDCL 62-6-2 provides:

An employer covered by the provisions of this title who has knowledge of an injury that requires medical treatment other than minor first aid or that incapacitates the employee for seven or more calendar days shall file a written report with:
(1) The Department of Labor when the employer is self-insured under § 62-5-5; or
(2) The employer's insurer when the employer has insured the liability under § 62-5-2 or 62-5-3.
The report shall be filed within seven calendar days, not counting Sundays and legal holidays, after the employer has knowledge of the injury, unless the employer had good cause for failing to file the written report within the seven-day period. The report shall be made on a form approved by the Department of Labor. Any employer who fails to file a report as required by this section is

guilty of a Class 2 misdemeanor and is subject to an administrative fine of one hundred dollars payable to the Department of Labor.

8. SDCL 62-6-3 provides:

The insurer shall file a copy of the report required by § 62-6-2 with the Department of Labor within ten days after receipt thereof.
The insurer or, if the employer is self-insured, the employer, shall make an investigation of the claim and shall notify the injured employee and the department, in writing, within twenty days from its receipt of the report, if it denies coverage in whole or in part. This period may be extended not to exceed a total of thirty additional days by the department upon a proper showing that there is insufficient time to investigate the conditions surrounding the happening of the accident or the circumstances of coverage. If the insurer or self-insurer denies coverage in whole or in part, it shall state the reasons therefor and notify the claimant of the right to a hearing under § 62-7-12. The director of the Division of Insurance, or the secretary of labor if the employer is self-insured, may suspend, revoke, or refuse to renew the certificate of authority, or may suspend or revoke all certificates of authority granted under Title 58 to any company or employer which fails, refuses, or neglects to comply with the provisions of this section. A company or employer which fails, refuses, or neglects to comply with the provisions of this section is also subject to an administrative fine of one hundred dollars payable to the Department of Labor for each act of noncompliance, unless the company or employer had good cause for noncompliance.

their insurers would not be required to document, report, or investigate any employee injuries or deaths when, at first glance, the employer does not consider the injuries or deaths to be compensable under the workers' compensation statutes. *See Helmbolt v. LeMars Mutual Insurance Co., Inc.,* 404 N.W.2d 55, 59 (S.D.1987) (stating "we should not presume the legislature intended an absurd result").

[¶ 26.] Based on the above, it has not been shown that the trial court erred in holding that Hills had actual knowledge of Mudlin's injuries. We affirm Issue 2.

[¶ 27.] **3. Whether the trial court erred in holding that Mudlin's claim was not barred by willful misconduct.**

[¶ 28.] SDCL 62–4–37 provides:

No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, illegal use of any schedule I or schedule II drug, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer.

This Court has stated:

The term "willful misconduct" has long been defined in this state as "something more than ordinary negligence but less than deliberate or intentional conduct. Conduct is gross, willful, wanton, or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable,* as distinguished from a *possible* (ordinary negligence), result of such conduct."

*Fenner v. Trimac Transportation, Inc.,* 1996 SD 121, ¶ 9, 554 N.W.2d 485, 487 (citing *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874, 876 (S.D.1983))

(emphasis in the original). Black's Law Dictionary defines willful misconduct as follows:

Under workers' compensation acts, precluding compensation, [willful misconduct] means more than mere negligence, and contemplates the intentional doing of something with knowledge that it is likely to result in serious injuries, or with reckless disregard of its probable consequences.

Black's Law Dictionary 1600 (6th ed. 1990).

[¶ 29.] Hills claims that at the time of the accident Mudlin was speeding, not wearing her seatbelt, under the influence of prescription medication, and she fell asleep at the wheel. Hills asserts that each of these activities equates to willful misconduct and bars Mudlin from compensation under SDCL 62–4–37.

*Speeding*

[¶ 30.] While Mudlin testified that she was driving "generally within the speed limit posted," the law enforcement officer investigating the accident estimated that she was driving at a rate of 75 miles per hour, which is ten miles per hour over the posted speed limit. However, whether Mudlin was speeding or not, Hills fails to establish that her injuries were due to the fact that she was speeding. In fact, the only witness that Hills relies on pertaining to this matter is the emergency room physician that treated Mudlin, Dr. Jeff Anderson, and he testified that he could *not* say her injuries were due to traveling beyond the speed limit.

*Failure to Wear Her Seat Belt*

[¶ 31.] Mudlin admits that she was not wearing her seat belt at the time of the accident. Hills argues that this was a failure "to perform a duty required by statute" and constituted willful misconduct

on Mudlin's part.[9] However, failure to use a seat belt in South Dakota is considered a secondary violation. SDCL 32–38–5. Moreover, failure to comply with the statutory seat belt use requirements "does not constitute contributory negligence, comparative negligence, or assumption of the risk" and *"may not be introduced as evidence in any criminal litigation . . . or in any civil litigation on the issue of injuries or on the issue of mitigation of damages."* SDCL 32–38–4 (emphasis added).

### Under the Influence of Prescription Medication

▆▆▆ [¶ 32.] Mudlin admits to taking a Valium pill from a "left-over" prescription at 6:00 p.m. the evening before her accident. However, the only witness to testify as to what effect the medication may have had on Mudlin at the time of the accident was Dr. Mike Evans, a Ph.D. toxicologist. In his report, Dr. Evans stated:

> Valium is a controlled medication and contains the active drug Diazepam. When taken as described by Ms. Mudlin (approximately 1 mg dose at 6:00 PM the evening before the accident) *it is my opinion that the ingest of Valium would not affect her driving performance at the time of the accident (approximately 13 hours later).*

(emphasis added).

[¶ 33.] Therefore, even if we accept Hills' assertion that Mudlin's ingestion of the left-over medication equates to willful misconduct, it has not been shown that the injuries were sustained *"due to the employee's willful misconduct." See* SDCL 62–4–37 (emphasis added).

### Falling Asleep at the Wheel

▆▆▆ [¶ 34.] Hills argues that Mudlin's falling asleep at the wheel constitutes willful misconduct and bars her claim for workers' compensation. As supporting authority, Hills relies on two cases.

[¶ 35.] In *Fonder v. Workers' Comp. Appeal Bd.,* a Pennsylvania Commonwealth Court affirmed the denial of an employee's claim for workers' compensation benefits resulting from injuries he received in a vehicle accident. 842 A.2d 512, 515 (Pa.Cmwth.Ct.2004). The employee was seriously injured while returning home from his fixed place of work when he fell asleep at the wheel and hit a tree. *Id.* at 513. This case is distinguishable in that the court did not bar the claim because of any willful misconduct on the part of the employee, rather the court concluded that, as a matter of law, the employee was not within the course and scope of employment at the time of the accident. *Id.* at 515.

[¶ 36.] Hills also cites to *Lukens v. Zavadil* as supporting authority for the proposition that Mudlin's claim should be barred due to the fact that she fell asleep at the wheel. 281 N.W.2d 78 (S.D.1979). In *Lukens,* the plaintiff brought suit for damages incurred as a result of a vehicle accident covered under the guest statute. *Id.* at 79. The jury found for the plaintiff but the trial court granted the defendant's motion for judgment notwithstanding the verdict. *Id.* at 80. This Court reversed and reinstated the jury verdict, holding that there was sufficient evidence for the jury to conclude that the defendant's actions constituted willful and wanton misconduct. *Id.* at 81. Specifically, this Court held:

---

**9.** SDCL 32–38–1 provides, in part, that "every operator and front seat passenger of a passenger vehicle operated on a public highway in this state shall wear a properly adjusted and fastened safety seat belt system."

In reviewing plaintiff's evidence concerning defendant's conduct, we find that defendant had limited driving experience; she knew the windshield wipers were not working properly when she left home; it was late at night; it was a strange road; defendant had been drinking; defendant was drowsy; it was raining; the windshield wipers were causing the window to streak and glare; defendant continued driving at approximately fifty miles per hour and finally ended up in the wrong lane of traffic and collided head on with an approaching automobile. Certainly a jury might find from those facts that the probability, as distinguished from the possibility, of an accident was present.

*Id.* at 80–81. This guest statute case is not on point because the issue was not whether a claim for workers' compensation benefits should be barred due to an employee's alleged willful misconduct. In addition, the defendant's willful misconduct involved more than just falling asleep at the wheel.

[¶ 37.] However, the case of *Keil v. Nelson* is directly on point and is more persuasive authority. 355 N.W.2d 525 (S.D.1984). In *Keil*, a truck driver was en route to his destination when he fell asleep at the wheel and was subsequently injured. The truck driver sought compensation from his employer for his injuries. This Court upheld the circuit court's ruling that the employee "was injured in the pursuit of his employment" and that "[h]is employment is not exempt from worker's compensation." *Id.* at 528. Furthermore, this Court upheld the circuit court's ruling that there was *no merit* to the employer's assertion that the claim should be barred because the act of falling asleep at the wheel constituted willful misconduct on the part of the employee. *Id.* at 530.

[¶ 38.] Hills also argues that the speeding, failure to wear a seatbelt, Valium, and falling asleep collectively constitutes willful misconduct. We have considered the conduct individually and collectively and do not agree that it constitutes willful misconduct under the workers' compensation laws.

[¶ 39.] Based on the above, it has not been shown that the trial court erred in holding that Mudlin's claim was not barred by willful misconduct. We affirm Issue 3.

[¶ 40.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.