#29114, #29138-a-JMK
**2021 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

#29114

| | |
|---|---|
| LISA A. TAMMEN, | Plaintiff and Appellant, |
| and | |
| RANDALL R. JURGENS, | Plaintiff, |
| v. | |
| GERRIT A. TRONVOLD, an individual, | Defendant, |
| and | |
| CITY OF PIERRE, a South Dakota Municipal Corporation, and PIERRE VOLUNTEER FIRE DEPARTMENT, a South Dakota nonprofit corporation, jointly and severally, | Defendants and Appellees. |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

#29138

| | |
|---|---|
| LISA A. TAMMEN, | Plaintiff, |
| and | |
| RANDALL R. JURGENS, | Plaintiff and Appellant, |
| v. | |
| GERRIT A. TRONVOLD, an individual, | Defendant, |
| and | |
| CITY OF PIERRE, a South Dakota Municipal Corporation, and PIERRE VOLUNTEER FIRE DEPARTMENT, a South Dakota nonprofit corporation, jointly and severally, | Defendants and Appellees. |

\* \* \* \*

ARGUED
OCTOBER 5, 2020
OPINION FILED **09/22/21**

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Retired Judge

* * * *

MARK W. HAIGH
EDWIN E. EVANS
TYLER W. HAIGH of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                     Attorneys for plaintiff and
                                              appellant Lisa A. Tammen.


JOHN R. HUGHES
STUART J. HUGHES of
Hughes Law Offices
Sioux Falls, South Dakota                     Attorneys for plaintiff and
                                              appellant Randall R. Jurgens.


ROBERT B. ANDERSON
DOUGLAS A. ABRAHAM of
May, Adam, Gerdes and Thompson, LLP
Pierre, South Dakota                          Attorneys for defendant and
                                              appellee City of Pierre.


MICHAEL L. LUCE
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz, & Lebrun, P.C.
Sioux Falls, South Dakota                     Attorneys for defendant and
                                              appellee Pierre Volunteer Fire
                                              Department.

KERN, Justice

[¶1.]        Lisa A. Tammen and Randall R. Jurgens (Plaintiffs) appeal the circuit court's order granting summary judgment to defendants City of Pierre (City) and Pierre Volunteer Fire Department (PVFD).  The court granted summary judgment because it concluded that Gerrit A. Tronvold, an on-call volunteer member of the PVFD, was not acting within the scope of his employment when he collided with Plaintiffs' motorcycle while en route to a routine PVFD meeting.  Accordingly, the circuit court determined that the City and the PVFD were not vicariously liable for Tronvold's actions under the doctrine of respondeat superior.  Additionally, the court held that the City and the PVFD were shielded from suit by governmental immunity.  Plaintiffs appealed, asserting that Tronvold was acting within the scope of his employment and that the City and the PVFD waived their governmental immunity to the extent of their risk protection coverages.  We affirm.

## Factual and Procedural Background

[¶2.]        On August 1, 2016, shortly after 6:00 p.m., Tronvold was driving southwest on Grey Goose Road in a 2002 Chevrolet Silverado extended cab pickup truck toward a controlled "T-intersection" at South Dakota Highway 1804.  As he approached the intersection, he observed two or three vehicles on Highway 1804 in the right-turn lane, signaling to make a right-hand turn onto Grey Goose Road.  Anticipating that the vehicles would turn right at the intersection, Tronvold drove through the stop sign to make a left-hand turn onto Highway 1804.  As he crossed the oncoming lane of traffic, he failed to see the motorcycle, ridden by Jurgens and Tammen, in the oncoming lane just next to one of the vehicles turning right.  To

avoid hitting the motorcycle, Tronvold accelerated through the intersection toward the ditch. The Plaintiffs crashed into the side of Tronvold's pickup truck near the rear bumper, sandwiching both Plaintiffs' left legs between the motorcycle and the truck bumper. Both Plaintiffs suffered life-threatening injuries, which included the amputation of their left legs above the knee. Tronvold was not injured. He was cited for failure to yield or stop at an intersection in violation of SDCL 32-29-2.1 and pled guilty to this offense.

[¶3.]      At the time of the accident, Tronvold was driving to Pierre, from his home located approximately ten miles outside of Pierre, to attend a monthly meeting at the Pierre Fire Station scheduled for 6:30 p.m. He was not responding to an active "fire call" or an emergency at the time of the collision. Tronvold drove his own pickup on the day of the accident which he insured through State Farm. At all times, Tronvold had affixed to his front bumper a half-license plate, issued by the PVFD, which read, "Member Fire Department/Pierre Fire Department." The half-license plate provided notice to the public and law enforcement that he was a member of the PVFD when responding to a fire call.

[¶4.]      As a rookie member of the PVFD, Tronvold was not yet a certified firefighter. One of the expectations of rookie PVFD members was to attend PVFD's monthly training meetings. The City's municipal ordinance stated that members may not miss multiple successive meetings and needed to give advance notice to their captain if they were going to be absent for a monthly training meeting, but Fire Chief Ian Paul (Chief Paul) testified that in his view attendance at the

meetings was not mandatory.[1]  The parties dispute whether Tronvold was an uncompensated employee, an agent, or a volunteer for the PVFD.[2]

[¶5.]        While the PVFD does not pay its volunteer members, it does provide vehicle insurance coverage for physical damage incurred to a member's vehicle during official, authorized duties.  According to the bylaws of the PVFD, members must attend 40 hours of training per year and respond to 25 percent of all calls received by the PVFD.[3]  Chief Paul stated that requiring members to attend regular training is necessary to provide an effective fire department.  Although the parties

---

1.        Pierre City Ordinance Section 2-3-415 provides:

> It shall be the duty of each member of a fire company to attend each and all of the drills and meetings of such company, and to respond to each and every call out for a fire, or to the proper alarms given, in cases of a fire within the corporate limits of the city.  In the event that a member of such fire company shall fail or neglect to attend such company drills or meetings for three successive drills or meetings, or should a member fail or neglect to respond to such fire alarm . . . it shall become the duty of the chief of the fire department to make an order in writing, dismissing such member or members from membership . . . .

In 2016, Tronvold missed four consecutive meetings.  However, Chief Paul testified that the PVFD did not enforce this provision against Tronvold.  At the time of the collision, Tronvold had already exceeded PVFD's requirements for certification.  The parties contested the mandatory nature of the meetings.

2.        The PVFD was organized in 1925 as a non-profit corporation to fulfill the governmental function of preventing and suppressing "fires within the City of Pierre."  The City provides funding for the PVFD's equipment such as fire stations, apparatuses, personal protective equipment (PPE), and member benefits.  The PVFD is composed primarily of volunteers who are approved by the City's Board of Commissioners.

3.        The purpose of these requirements, according to Chief Paul, was to encourage members to "tak[e] the time to respond and [be] active on the fire department."

-3-

disputed whether Tronvold had met these requirements, Chief Paul testified at his deposition that Tronvold completed 64 hours of training and responded to over 50 percent of all calls during the year of the accident.

[¶6.]     PVFD required members to use their own vehicles to respond to fire calls, or at the very least, have reliable transportation to enable their effective response.  This requirement was beneficial to the PVFD to the extent that it did not have to provide vehicles to its members.  Tronvold and other members were encouraged to keep their PPE[4] in their vehicles so that they could promptly respond to calls without first having to stop at the fire station to pick up their gear.  To enable quick responses, the PVFD issued each member, including Tronvold, a pager to alert them of fire emergencies.

[¶7.]     In November 2016, Plaintiffs sued Tronvold for negligence, and, in September 2017, they filed amended complaints against the City and the PVFD asserting vicarious liability under the doctrine of respondeat superior.  The City and the PVFD denied liability, alleging that Tronvold was not acting within the scope of his employment when driving to the meeting at the fire station in Pierre.

[¶8.]     Both the City and the PVFD had risk protection coverages in place at the time of the accident.  The City was participating in the South Dakota Public Assurance Alliance (SDPAA), a government risk-sharing pool also known as the

---

4.    PPE in this context describes volunteers' "turn-out gear" which included hoods, helmets, pants, suspenders, gloves, boots, and other items necessary for volunteers to fight fires upon their arrival at the scene.

South Dakota Public Entity Pool for Liability.[5]  Under the SDPAA, the City held

two coverages: the Memorandum of Governmental Liability Coverage (GLC) and

the Memorandum of Automobile Liability Coverage (Auto Coverage).  The GLC

contained an exclusion endorsement which limited coverage for "Fire Department,

Fire Fighting activities or Fire Department vehicles."  The Auto Coverage afforded

protection for bodily injury or property damage resulting from the use of an

automobile.  It did not contain an exclusion endorsement for firefighting activities.

[¶9.]      The PVFD had general liability and automobile insurance coverage

through a policy from Continental Western Insurance Company (Continental).  This

coverage included a South Dakota Governmental Liability Amendatory

Endorsement (Amendatory Endorsement), which the PVFD argued applied equally

to all relevant provisions of the policy.  The provisions of this Endorsement stated

that Continental would not cover any suit barred by sovereign or governmental

immunity, and the purchase of the policy did not constitute a waiver of these

protections.

[¶10.]     In February 2019, the City and the PVFD moved for summary

judgment contending that they were not liable for Tronvold's negligence because he

was neither an employee nor an agent of either entity.  The City and the PVFD

further argued that the "going and coming" rule, which precludes respondeat

---

5.    "The purpose of this program is to provide a fund as the sole source for
      payment of valid tort claims against all member public entities of the state
      and their officers and employees for all liability they may incur based upon
      negligence in the operation of motor vehicles or negligence in performing
      other acts within an employee's scope of employment . . . ."  *Truman v. Griese*,
      2009 S.D. 8, ¶ 49, 762 N.W.2d 75, 89 (Sabers, J., dissenting) (emphasis
      omitted) (citing SDCL 3-22-1 (2009)).

superior liability for an employee's normal commute to and from work, applied because Tronvold was driving to a meeting rather than responding to an active emergency. Regarding the SDPAA coverages, the City claimed that the firefighting exclusion endorsement applied to both its GLC and Auto Coverage. As a result, it claimed Tronvold's accident was not covered under its policy, and, therefore, it was protected from suit by governmental immunity. The City also argued that its Auto Coverage did not apply to Tronvold because he was not acting within an official capacity and therefore not a covered party. In addition, the City claimed the policy's inventory of covered property did not list Tronvold's pickup as insured property. The PVFD, relying on the Amendatory Endorsement within the Continental policy, asserted that it retained its governmental immunity.

[¶11.]     Plaintiffs resisted the motions contending that, because the City controls and funds the PVFD, Tronvold was an employee or agent of both entities. As such, Plaintiffs asserted that Tronvold was acting within the scope of his employment or agency on behalf of the City and the PVFD when he collided with Plaintiffs. While acknowledging that the going and coming rule generally precludes vicarious liability arising from ordinary commutes, Plaintiffs urged the circuit court to adopt exceptions to the rule derived from workers' compensation law, namely the "required vehicle" exception or, alternatively, the "special errand" exception. Focusing primarily on the required vehicle exception, Plaintiffs contended that the City and the PVFD were vicariously liable under respondeat superior.

[¶12.]     With regard to the City's coverages, Plaintiffs claimed that because the firefighting exclusion endorsement contained in the GLC was not applicable to the

City's Auto Coverage, the City was liable for any damages awarded to Plaintiffs to the extent of its coverage limits. Similarly, as it pertained to the PVFD, Plaintiffs relied on SDCL 21-32A-1[6] to support their claim that the PVFD waived its governmental immunity to the extent of the coverage afforded in the Continental policy. Plaintiffs also argued the Amendatory Endorsement was void as against public policy. Finally, Plaintiffs argued that a question of fact existed regarding whether Tronvold was grossly negligent which, if found by a jury, would remove the governmental immunity provided to the PVFD by SDCL 20-9-45.[7]

[¶13.] The circuit court held a hearing on the motions and issued a written opinion granting the City's and the PVFD's motions for summary judgment. It concluded that Tronvold was not acting within the scope of his employment at the time of the accident. The court rejected Plaintiffs' requests to adopt exceptions to the going and coming rule, holding that respondeat superior liability did not attach to the City nor the PVFD. It reasoned that driving to the regularly scheduled PVFD meeting was not required by or naturally and incidentally related to Tronvold's firefighting duties. Further, the court found that, although Tronvold carried his

---

6.    SDCL 21-32A-1, provides: "To the extent that any public entity . . . participates in a risk sharing pool or purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit in the same manner that any other party may be sued."

7.    SDCL 20-9-45, provides: "A nonprofit fire . . . entity organized or incorporated in the State of South Dakota and its volunteer officers and directors are immune from civil liability for any action brought in any court in this state on the basis of any act or omission resulting in damage or injury if . . . [t]he damage or injury was not caused by gross negligence . . . ."

PPE equipment in his pickup, this fact was insufficient to bring Tronvold's commute within the scope of his employment. Finally, the circuit court determined that the accident was not a foreseeable consequence of the PVFD's monthly meetings.

[¶14.]    The circuit court also entered alternative holdings, which addressed the City's and the PVFD's claims of governmental immunity. The court determined the City had not waived its governmental immunity because its policies did not cover Tronvold's accident due to the GLC's firefighting exclusion endorsement. It also found the City's Auto Coverage did not expressly cover Tronvold's vehicle, and, therefore, the policy did not cover his accident.

[¶15.]    With reference to the PVFD's policy with Continental, the circuit court noted that the policy's Amendatory Endorsement stated that the PVFD was not waiving any governmental immunity by purchasing the policy and noted that the policy did not provide liability coverage for non-emergency responses. The court concluded that the PVFD's policy did not cover Tronvold's accident, and, as a result, the PVFD did not waive governmental immunity under SDCL 21-32A-1. The court did, however, recognize that if this Court concludes on appeal that Tronvold was acting within the scope of his employment, a jury would need to determine if he was negligent and, if so, the degree of his negligence. The court reasoned that if Tronvold was found grossly negligent, then the PVFD would be liable because Tronvold would be outside the scope of the statutory immunity provided by SDCL 20-9-45.

[¶16.]    Plaintiffs appeal, raising several issues in support of their argument that the circuit court erred in granting the City's and the PVFD's motions for

summary judgment.[8]  Because whether Tronvold was acting within the scope of his employment at the time of the accident is dispositive of the remaining claims, we address only this issue.

## Standard of Review

[¶17.]     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  SDCL 15-6-56(c).  We review de novo a circuit court's entry of summary judgment.  *Lammers v. State by & through Dep't of Game, Fish & Parks*, 2019 S.D. 44, ¶ 9, 932 N.W.2d 129, 132.  "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party . . . .  If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 10, 758 N.W.2d 436, 443 (citation omitted).

## Analysis and Decision

[¶18.]     In South Dakota, "[t]he ancient doctrine of respondeat superior is well established as holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."[9]  *Kirlin,*

---

8.     Plaintiffs raised the following additional issues: (1) whether the circuit court erred in holding that there was no liability coverage under the terms of the City's coverage agreements; and (2) whether the Amendatory Endorsement in the PVFD's policy was void as against public policy.

9.     The parties refer to Tronvold as an employee, gratuitous employee, volunteer, or agent of the PVFD or the City.  We decline to address whether a volunteer firefighter is an agent of the city or the volunteer fire department for which

(continued . . .)

2008 S.D. 107, ¶ 12, 758 N.W.2d at 444 (citation omitted). An employer becomes "liable for injuries to the person or property of third persons caused by the negligence of his employee when such negligence occurs within the scope of his [employee's] employment." *Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 180 (S.D. 1987). The phrase "within the scope of employment" is "vague but flexible, referring to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Bernie v. Cath. Diocese of Sioux Falls*, 2012 S.D. 63, ¶ 9, 821 N.W.2d 232, 237 (citation omitted).

[¶19.] When confronted with deciding whether an agent's negligent act falls within the scope of his or her employment, we apply a two-prong test: (1) "whether the purpose of the act was to serve the principal" and (2) "whether the act was foreseeable." *Id.* Under the second prong, for an act to be foreseeable, the "employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." *Kirlin*, 2008 S.D. 107, ¶ 13, 758 N.W.2d at 444 (citation omitted). "In respondeat superior, foreseeability includes a range of conduct which is fairly regarded as

---

(. . . continued)
he or she renders services because we affirm the circuit court's grant of summary judgment on the basis of the going and coming rule which would apply even if he were determined to be an agent or employee. *See Kirlin*, 2008 S.D. 107, ¶ 10, 758 N.W.2d at 443 (stating, if any basis exists which supports the ruling, the Court's "affirmance of a summary judgment is proper" (citation omitted)).

typical of or broadly incidental to the enterprise undertaken by the employer." *Id.* ¶ 14, 758 N.W.2d at 444 (emphasis omitted) (citation omitted).

[¶20.]     Ordinarily, "the question of whether the act of a servant was within the scope of employment must, in most cases, be a question of fact for the jury." *Hass v. Wentzlaff*, 2012 S.D. 50, ¶ 20, 816 N.W.2d 96, 103 (citation omitted). Whether an employee is within the scope of employment often involves questions of foreseeability that may require resolution by the trier of fact. *See id.*; *Kirlin*, 2008 S.D. 107, ¶ 16, 758 N.W.2d at 445; *Fullmer v. State Farm Ins. Co.*, 498 N.W.2d 357, 363 (S.D. 1993). However, this case does not require us to consider questions of foreseeability. Rather, we must determine whether Tronvold's actions fall within the going and coming rule, which precludes an employer's liability, as a matter of law, when an employee is "going to and coming from work . . . ." *S.D. Pub. Entity Pool for Liab. v. Winger*, 1997 S.D. 77, ¶ 19, 566 N.W.2d 125, 131.

[¶21.]     Accepted in most jurisdictions, the going and coming rule "ha[s] its genesis in workers' compensation law and has been imported into tort law." *Carter v. Reynolds*, 815 A.2d 460, 466 (N.J. 2003). "[T]he public policy underpinnings justifying the rule are clear: it is inherently unfair to penalize an employer by 'imposing unlimited liability . . . for the conduct of its employees over which it has no control and from which it derives no benefit.'" *Newman v. White Water Whirlpool*, 197 P.3d 654, 657 (Utah 2008) (citation omitted); *see also* Restatement

(Third) of Agency § 7.07 cmt. e (2006).[10] This is because, "when employees travel to or from work they are deemed to be acting in their own interests without constraints by the employer regarding the method or means of the commute." *Carter*, 815 A.2d at 467. As a result, the two key questions we must analyze are: (1) whether the employer had control over the employee's commute, and (2) whether the employer derives a benefit from the employee's commute. *See generally Driessen v. Schiefelbein*, 67 S.D. 645, 297 N.W. 685, 687 (1941); s*ee also Carter*, 815 A.2d at 466–67 (explaining the rationale behind the going and coming rule).

[¶22.] Plaintiffs advance separate arguments in support of their request for reversal of the circuit court's decision. Jurgens argues that the circuit court erred in applying the going and coming rule rather than attributing vicarious liability to the City and the PVFD based upon the foreseeability factors set forth in *Hass*, 2012 S.D. 50, ¶ 28, 816 N.W.2d 96, 104–05, taken from the Restatement (Second) of Agency.[11] Jurgens also relies upon the enterprise theory of vicarious liability to avoid the going and coming rule.[12] Tammen, on the other hand, urges this Court to

---

10.  *See also* Rhett B. Franklin, *Pouring New Wine into an Old Bottle: A Recommendation for Determining Liability of an Employer Under Respondeat Superior*, 39 S.D. L. Rev. 570, 588 (1994).

11.  Jurgens cites the Restatement (Second) of Agency § 229(2) (1958), which provides for a multi-factor foreseeability analysis for determining if an employee was acting within the scope of his or her employment. As discussed above, because we conclude Tronvold falls within the bright-line coming and going rule, which precludes a determination that his employers are liable under the respondeat superior doctrine, it is unnecessary to apply a foreseeability analysis in this case.

12.  Enterprise theory places "[t]he losses caused by the torts of employees . . . upon that enterprise itself, as a required cost of doing business." *Hinman v.*
(continued . . .)

consider one of the exceptions to the going and coming rule—either the required vehicle exception or the special errand exception.

***Going and Coming Rule***

[¶23.]    Our review of the record in a light most favorable to Tronvold reveals that Tronvold's act of driving to the meeting falls squarely within the going and coming rule because neither the PVFD nor the City had sufficient control over nor received a sufficient benefit from his commute. Even if Tronvold was required to attend the meeting, his act of driving to the meeting was indistinguishable from that of an ordinary commuter whose employer requires him or her to have personal transportation to arrive at work. Neither the City nor the PVFD exercised control over his commute by providing him a vehicle, reimbursing him for his commute to the fire station, or directing the means by which he arrived at the meeting.

---

(. . . continued)

*Westinghouse Elec. Co.*, 471 P.2d 988, 990 (Cal. 1970). It is based upon the theory that, considering the enterprise's past experiences, the enterprise will cause harm to others through the torts of the enterprise's employees, and the enterprise, rather than the injured plaintiff, should bear these costs because the enterprise is better able to absorb the costs. *See id.*; *see also Newland v. Cnty. of Los Angeles*, 234 Cal. Rptr. 3d 374, 382 (Cal. Ct. App. 2018). As one author explained,

> The following policy reasons have been proffered to justify the enterprise liability theory and the deliberate allocation of risk advanced by that theory: (1) it tends to compel employers to promote accident avoidance, (2) it tends to provide greater assurance of compensation for accident victims, and (3) at the same time it tends to provide reasonable assurance that, like other costs, accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them.

Franklin, *supra* ¶ 20 n.10, at 575–76.

[¶24.]     Plaintiffs argue that Tronvold's use of his vehicle as a rookie member of the PVFD was subject to greater control because Tronvold was issued an identifying license plate, and Chief Paul required firefighters to have reliable transportation and to carry their PPE with them. Although Tronvold chose to keep his PPE with him in his vehicle, Chief Paul testified that members had a choice of storing the PPE in their vehicle or at the station. Further, the requirements for a reliable vehicle were designed to ensure that firefighters were able to timely respond to an emergency. At the time of the accident, Tronvold was not responding to an emergency and there is no evidence that Tronvold's vehicle served a special purpose for his commute to the meeting. Moreover, had he arrived at the fire station as planned, Tronvold's vehicle would have served no special purpose after his arrival.

[¶25.]     Further, the benefits the entities received from Tronvold's commute are insufficient to place the act within the scope of his employment. As a Louisiana court of appeals noted, for a court to impose liability upon an employer for an employee's commute, "[s]omething more is required, some distinguishing fact establishing that under the peculiar facts of employment the business interest is directly benefitted." *Beard v. Seamon*, 175 So. 2d 671, 675 (La. Ct. App. 1965) (citation omitted). While the training itself is an important part of a firefighter's duties, the benefits the entities received from Tronvold's commute to the training are no different than the regular benefits an employer receives from an employee showing up for work.

[¶26.] Were we to conclude that Tronvold's drive to the training meeting was within the scope of his employment, under these specific facts, then the going and coming rule would have no effect. Unfortunate as the circumstances are here, the Plaintiffs' injuries were "suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963). Consequently, neither the City nor the PVFD derived a benefit from nor had control over Tronvold's commute. *See generally Driessen*, 297 N.W. at 687; *Carter*, 815 A.2d at 467. As a result, Tronvold's actions were within the going and coming rule.

***Exceptions to the Going and Coming Rule***

[¶27.] Plaintiffs urge us to adopt the required vehicle exception or the special errand exception to the going and coming rule. These exceptions, like the going and coming rule, "are also rooted in workers' compensation law but have been engrafted onto tort law."[13] *Carter*, 815 A.2d at 467 (stating courts have applied respondeat superior to injuries resulting from an employee's commute when the employee is

---

13. Plaintiffs contend that we previously recognized similar exceptions to the going and coming rule in *S.D. Pub. Entity Pool for Liab. v. Winger*, 1997 S.D. 77, 566 N.W.2d 125. In *Winger*, we recognized the dual-purpose exception which applies when an employee is on a special errand for the employer and is involved in an incident while taking a detour for personal purposes, instead of acting solely at the behest of the employer. *Id.* ¶ 15, 566 N.W.2d at 130. We also generally discussed exceptions that may apply when the employer furnishes the employee a vehicle as an integral part of the employee's employment and when an employee is injured when performing a task naturally and incidentally related to the employment. *Id.* ¶¶ 19–20, 566 N.W.2d at 131–32. Here, however, none of these circumstances are applicable.

required to use his or her personal vehicle for work or the employee is engaged in a special errand on behalf of the employer); *Lobo v. Tamco*, 105 Cal. Rptr. 3d 718, 720–21 (Cal. Ct. App. 2010) (discussing that the required vehicle exception applies to the going and coming rule because the use of the vehicle provides an incidental benefit to the employer).

[¶28.]     Under the required vehicle exception, courts have imposed liability upon employers when an "employer requires the employee to drive his or her vehicle to work so that the vehicle is available for use in fulfilling the employee's work-related responsibilities." *Mannes v. Healey*, 703 A.2d 944, 946 (N.J. Super. Ct. App. Div. 1997). Under the special errand exception, "courts have imposed *respondeat superior* liability upon the employer when the employee is engaged in a special errand or mission" at the employer's behest. *Id.* These exceptions to the going and coming rule spring from the employer's exertion of "some *control* over the employee's actions and a palpable *benefit* to be reaped . . . , thus squarely placing such conduct back into the vicarious liability construct . . . ." *Carter*, 815 A.2d at 467 (emphasis added).

[¶29.]     While we have drawn from workers' compensation cases to analyze tort law and found those decisions "useful in exploring the themes surrounding scope of employment questions[,]" there are also significant distinctions between the principles animating workers' compensation coverage and the doctrine of respondeat superior. *S.D. Pub. Entity Pool for Liab.*, 1997 S.D. 77, ¶ 8, 566 N.W.2d at 128.

[¶30.]        The first distinction between these two bodies of law stems from the differing nature of the proceedings.  Under workers' compensation law, the employee seeking workers' compensation benefits forfeits his or her right to bring a tort action against the employer for workplace injuries in exchange for a limited remedy that is quick and certain.  *Harn v. Cont'l Lumber Co.*, 506 N.W.2d 91, 95 (S.D. 1993).  To effectuate the expeditious and determinate nature of workers' compensation claims, courts construe the phrase "arising out of and in the course of employment *liberally*."  *Mudlin v. Hills Materials Co.*, 2005 S.D. 64, ¶ 8, 698 N.W.2d 67, 71 (quotation marks omitted) (emphasis added).  In contrast, the doctrine of respondeat superior "is grounded upon a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities."  *Leafgreen v. Am. Fam. Mut. Ins. Co.*, 393 N.W.2d 275, 280 (S.D. 1986) (citation omitted).  This is because in respondeat superior cases, "[t]he employer's vicarious liability is a function of status and stems entirely from the tortious conduct of the employee, not from any tortious conduct by the employer."  *Cameron v. Osler*, 2019 S.D. 34, ¶ 16, 930 N.W.2d 661, 666 (citation omitted).  Accordingly, a determination of vicarious liability within the context of respondeat superior requires a *narrower construction* of an employee's "scope of employment."  *See S.D. Pub. Entity Pool for Liab.*, 1997 S.D. 77, ¶ 8, 566 N.W.2d at 128 (when applying workers' compensation principles to respondeat superior, the court is not required to liberally construe coverage).

[¶31.]        This distinction suggests circumspection before adopting aspects of the former into the latter.  As a Colorado court of appeals observed:

> Applying cases furthering the policies of . . . workers'
> compensation law to respondeat superior claims would expand
> employers' liability to third parties significantly, creating a form
> of portal-to-portal responsibility . . . . [D]riving to and from
> work, even in a personal vehicle used for work, does little to
> serve the employer's purposes, aside from delivering the
> employee and the vehicle to the work site.

*Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 695 (Colo. App. 2006). As the Supreme Court of Connecticut explained, based on the differing policies underlying each body of law, the same factual circumstance could result in a court imposing liability on an employer in a workers' compensation case but not in a respondeat superior case. *See Fiano v. Old Saybrook Fire Co. No. 1, Inc.*, 209 A.3d 629, 641–42 (Conn. 2019). This can occur because respondeat superior requires a narrower view of an employee's scope of employment by focusing on whether the employer had control over the employee or received a benefit from the employee's act. *See* Restatement (Third) of Agency § 7.07 (2006).

[¶32.] The United States Supreme Court has likewise urged careful construction of the nature and circumstances surrounding the scope of a worker's employment before expanding liability beyond the going and coming rule. As the United States Supreme Court observed, injuries occurring during an employee's commute "are said not to arise out of and in the course of employment; rather they arise out of the ordinary hazards of the journey, hazards which are faced by all travelers and which are unrelated to the employer's business." *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 479, 67 S. Ct. 801, 807, 91 L. Ed. 1028 (1947). Accordingly, exceptions to the going and coming rule should "relate to situations

-18-

where the hazards of the journey may fairly be regarded as the hazards of the service." *Id.*

[¶33.]     Moreover, while not controlling, the workers' compensation cases Plaintiffs cite in support of their argument that the circuit court should have applied exceptions to the going and coming rule are factually distinguishable from the circumstances of Tronvold's accident. In *Pickrel v. Martin Beach, Inc.*, the employee of a company that engaged in the construction of electric power lines was killed while returning home from a project. 80 S.D. 376, 377, 124 N.W.2d 182, 183 (1963). We held the employee's actions fell within an exception to the going and coming rule because he was an "outside employee who [was] injured while being transported to or from work in a mode or means of transportation furnished by the employer as an integral part of the contract of employment." *Id.* at 378, 124 N.W.2d at 183. This rationale is inapplicable to the case before us. Neither the City nor the PVFD furnished Tronvold with a means of transportation integral to his employment.

[¶34.]     In *Mudlin v. Hills Materials Co.*, a construction company's employee used her personal vehicle to drive to a job site 125 miles from the company's base location. 2005 S.D. 64, ¶¶ 2–3, 698 N.W.2d 67, 70. The employer reimbursed her for travel costs because the employer required her to make the trip. *Id.* ¶ 12, 698 N.W.2d at 72. During the trip, the employee fell asleep while driving and was injured in the resulting accident. *Id.* ¶ 3, 698 N.W.2d at 70. The circuit court held that she sustained her injuries within the course of her employment because of the causal connection between the injury and the employment. *Id.* ¶ 4, 698 N.W.2d at

70. In affirming the circuit court's ruling, we examined three factors to determine whether to apply an exception to the going and coming rule in a workers' compensation case: "travel pay, custom and usage, and company policy." *Id.* ¶ 18, 698 N.W.2d at 74. In the case before us, none of these factors weigh in Plaintiffs' favor. Neither the City nor the PVFD reimbursed Tronvold for his travel, issued him a company vehicle, nor had a policy requiring him to drive his pickup to the meeting. Therefore, even if we applied the exceptions involved in *Pickrel* and *Mudlin* to the facts at hand, Tronvold's actions are not within the stated exceptions.

[¶35.] While we do not foreclose consideration of exceptions to the going and coming rule in an appropriate respondeat superior case in the future, we decline to apply them here because neither the City nor the PVFD exercised sufficient control nor received a sufficient benefit from Tronvold's commute.[14] To apply the required vehicle exception in this case would expand employer liability and the doctrine of respondeat superior beyond what the policy underlying the law supports and would stretch past existing applications of the doctrine. Employers commonly rely on their employees to drive their personal vehicles to arrive at work. This is especially true in rural America where "neither public transportation nor car pooling [are] common[.]" *Konradi v. United States*, 919 F.2d 1207, 1211 (7th Cir. 1990). An

---

14. Jurgens also suggests adoption of the *Hinman* court's test which reasoned that "exceptions will be made to the 'going and coming' rule where the trip involves an *incidental* benefit to the employer, *not common to commute trips by ordinary members of the work force.*" 471 P.2d at 991 (emphasis added). *Hinman*, however, is factually distinguishable in that the employee was reimbursed for travel time to the job site. *Id.* at 992. In contrast, neither the City nor the PVFD reimbursed Tronvold for his travel time, and the PVFD did not receive an incidental benefit from his commute beyond his attendance at the meeting. Tronvold's commute can only be considered ordinary.

expansion of respondeat superior through a "general rule that employers[,] who require their employees to use their own vehicle on the job, or permit them to use a company vehicle off the job, are liable for the employees' accidents while commuting in that vehicle" would result in extensive "litigation costs and judicial burdens . . . ." *Id.* Further, Tronvold's drive cannot be characterized as falling under the special errand exception because Tronvold was not on a special errand. He was simply commuting to a meeting when the accident occurred. This activity falls within the going and coming rule.

[¶36.] Based on our review of the facts in the light most favorable to Plaintiffs, we affirm the circuit court's determination that Plaintiffs failed to raise genuine issues of material fact regarding whether Tronvold was acting within the scope of his employment or agency. This is because, even if Tronvold is an agent or employee, his ordinary commute to the PVFD meeting placed him squarely within the going and coming rule, precluding liability under the doctrine of respondeat superior.

[¶37.] JENSEN, Chief Justice, and SALTER and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶38.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.